## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| Evonik Degussa GmbH, | Civil Action No. |
| Plaintiff, | 09-cv-636 (NLH-JS) CONSOLIDATED |
| v. | **OPINION** |
| Materia Inc., et al., | |
| Defendants. | |

| |
|---|
| Materia Inc., |
| Counterclaim Plaintiff, |
| and |
| University of New Orleans Foundation, |
| Third-Party Plaintiff, |
| v. |
| Evonik Degussa GmbH., |
| Counterclaim and Third-Party Defendant. |

**APPEARANCES:**

Daniel Christopher Mulveny
Alan Richard Silverstein
Brian R. Lemon
Claudia Schultze
Eric James Evain
Jeffrey B. Bove
R. Eric Hutz
Rudolf E. Hutz
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
   *Attorneys for Plaintiff, Third Party Defendant, and Counter Defendant Evonik Degussa GmbH*

Jack B. Blumenfeld
Julia Heaney
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
   *Attorneys for Defendant Materia Inc., Third Party Plaintiff The University of New Orleans Foundation and Counter Claimant Materia Inc.*

**HILLMAN, District Judge**

In this consolidated patent infringement action,[1] Plaintiff Evonik Degussa GmbH ("Evonik") alleges Defendant Materia Inc. willfully infringes U.S. Patent Nos. 7,378,528 and 7,652,145. In response, Materia Inc. alleges Evonik's patents are unenforceable because of inequitable conduct. Third Party Plaintiff, the University of New Orleans Foundation ("UNOF") joins Materia Inc. and counterclaims that Evonik willfully

---

[1] The Court notes that a Markman hearing has been held in this matter and a written opinion will be forthcoming shortly.

infringes UNOF's U.S. Patent No. 7,622,590 ("'590 Patent").  In response, Evonik moved to amend its counterclaim to allege that the '590 Patent is unenforceable due inequitable conduct.  This opinion concerns whether Evonik has properly plead its counterclaim for inequitable conduct concerning the '590 Patent.[2]

On December 13, 2011, the Magistrate Judge assigned to this matter entered an order granting Evonik's motion to amend its reply to include allegations of inequitable conduct in connection with the prosecution of the '590 patent (Count Four of the amended reply).  Before the Court is Materia Inc. and UNOF's (referred to collectively as "Materia") objection to the Magistrate Judge's Order or, alternatively, a motion to dismiss Count Four pursuant to Fed.R.Civ.P. 12(b)(6).  For the reasons discussed below, the Magistrate Judge's Order will be affirmed and the motion to dismiss will be denied.

## I. **JURISDICTION**

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (federal jurisdiction relating to patents).

---

[2] The '590 Patent was issued on November 24, 2009, entitled "Catalyst Complex with Carbene Ligand."  The named inventors are Steven P. Nolan and Jinkun Huang.  UNOF is the owner of the '590 Patent, and Materia Inc. has exclusive rights, including the right to sue for patent infringement.  Materia has alleged that Evonik has infringed certain claims under the '590 Patent and Evonik has counterclaimed that the '590 Patent is not enforceable because Materia engaged in inequitable conduct in applying for the patent, particularly, by failing to provide material information to the U.S. Patent and Trademark Office ("PTO").

3

**II. DISCUSSION**

Materia is requesting reconsideration of the Magistrate Judge's Order permitting Evonik to amend Count Four of its reply, or alternatively, moving to dismiss count four of Evonik's amended reply for failure to state a claim upon which relief can be granted. Although presented as two separate arguments, the standard applied is the same.

Materia argues that Evonik should not have been permitted to amend its reply because the amendment is futile.[3] The standard for futility is the same as legal insufficiency. See In re Alpharma Inc. Securities Litigation, 372 F.3d 137, 153 (3d Cir. 2004) ("As we have previously held, '[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'") (citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1434 (3d Cir. 1997)). "Thus, in assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule

---

[3] Amendments to pleadings are governed by Federal Civil Procedure Rule 15, which provides that the Court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). The Third Circuit has shown a strong liberality in allowing amendments under Rule 15 in order to ensure that claims will be decided on the merits rather than on technicalities. Dole v. Arco Chemical Co., 921 F.2d 484, 487 (3d Cir. 1990); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989). An amendment must be permitted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

12(b)(6)." Id. at 153-54 (internal quotations omitted).
Therefore, in requesting reversal of the Magistrate Judge's Order on grounds that the amendment of Count Four is futile, or requesting dismissal of Count Four on grounds that it fails to state a claim upon which relief could be granted, Materia is requesting the same relief pursuant to the same standard. Thus, to streamline the analysis, the Court will analyze Materia's motion under the Rule 12(b)(6) standard for a motion to dismiss.

**A. Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the

plaintiff's claim is and the grounds upon which it rests." Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196

(3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### B. Claim for Inequitable Conduct.

Materia seeks to have Evonik's counterclaim for inequitable conduct dismissed. An inequitable conduct claim is governed by Federal Circuit law. See Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009). Recently, the Federal Circuit examined the standard of proof needed for a claim of inequitable conduct and found the standard too low resulting in a "plague" on the courts and the patent system. See Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1276, 1289 (Fed. Cir. 2011).[4] The Therasense case, however, did not

---

[4] In Therasense, the Federal Circuit recounted how inequitable conduct in patent law evolved from a trio of Supreme Court cases interpreting the doctrine of unclean hands. Id. at 1285 (citing Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), overruled on other grounds by Standard Oil Co. v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), and Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)). The Court remarked that over time, charging inequitable conduct became a "common litigation tactic" and "[l]eft unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system." Id. at 1289. The Federal Circuit also noted that "[w]ith inequitable conduct casting the shadow of a hangman's noose, it is unsurprising that patent prosecutors regularly bury PTO examiners with a deluge of prior art references, most of which have marginal value." Id. A claim for inequitable conduct requires a finding of both intent

address the proper standard to be applied at the pleading stage. See id. at 1284-85 (reversing and remanding trial court decision finding patent unenforceable due to inequitable conduct after bench trial).

Cases decided after Therasense, have applied the pleading standard as set forth in Exergen. See Delano Farms Co. v. Ca. Table Grape Comm'n, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (permitting inequitable conduct claim where it was plead that information was withheld from PTO concerning patented varieties of grape vines used for wine in California). In Delano, the Federal Circuit held, "[a] charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the plaintiff's complaint recites facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and

---

to deceive and materiality. Id. at 1287. The Court rejected prior lower standards that permitted proof of intent to deceive on findings of gross negligence or negligence (knew or should have known), or that permitted a reduced showing of intent if the record contained a strong showing of materiality (sliding scale approach). Instead, the Federal Circuit held that to "prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO" and must show " but-for materiality," meaning "[w]hen an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id. at 1290-91.
Although Therasense did not address the proper standard at the pleading stage, the case is instructive regarding the Court's concern over the proliferation of inequitable conduct claims, and the evidence needed to ultimately prove such a claim.

9

withheld that information with a specific intent to deceive the PTO." Id. at 1350 (citing Exergen, 575 F.3d at 1318, 1330, and citing generally Therasense, 649 F.3d 1276 (en banc)).[5]

Other courts have followed Delano and applied the Exergen standard for determining whether an inequitable conduct claim has been properly plead at the pleading stage. See Taro Pharmaceuticals North America Inc. v. Suven Life Sciences, Ltd., No. 11-2452, 2012 WL 2513523, at *5 (D.N.J. Jun. 28, 2012) (applying pleading standard in Exergen because "[w]hile Therasense established a more stringent standard for proving inequitable conduct, the decision did not address whether Therasense's more stringent standards ... should apply at the pleading stage.") (citing Delano, 655 F.3d at 1350); Milwaukee Elec. Tool Corp. v. Hitachi Koki Co., Ltd., No. 09–948, 2012 WL 1952977, at *6 (E.D.Wis. May 29, 2012) (finding that Therasense does not apply to the pleading stage, and applying Exergen standard); W.L. Gore & Assocs., Inc. v. Medtronic, Inc., ---

---

[5] In Delano, the Federal Circuit ruled that a charge of inequitable conduct was adequately plead based on allegations that the co-inventor, Dr. Ramming, "had detailed knowledge that the [California Table Grape] Commission had gone out of its way to seek out information regarding widespread prior use of the patented [grape] varieties, had learned of multiple instances of such use, and had encouraged those in possession of the patented varieties to cease such use." This information, however, was not disclosed to the PTO. Id. at 1431. The Court found that a "reasonable jury could infer that Dr. Ramming knew of the prior use, appreciated that the prior use was material, and decided not to disclose that information to the PTO, with deceptive intent." Id. at 1350.

F.Supp.2d ----, No. 10-441, 2012 WL 368272, at *3 (E.D.Va. Feb. 3, 2012) ("Although the facts alleged in [defendant's] counterclaim may not be enough to satisfy the Therasense elements by clear and convincing evidence, the alleged facts are sufficient to satisfy Exergen's pleading requirements.").

Therefore, the proper standard to apply at this stage in the proceedings is the standard set forth in Exergen. As stated in Exergen, a claim for inequitable conduct must be plead with particularity under Rule 9(b). Exergen, 575 F.3d at 1326 (stating that under Federal Circuit law, inequitable conduct, while a broader concept than fraud, must be pled with particularity under Rule 9(b)) (citing Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). "The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Id. at 1327 n.3. (citing Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed.Cir. 2008); Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178, 1181 (Fed.Cir. 1995); 37 C.F.R. § 1.56 (2008)).

Therefore, "to plead the 'circumstances' of inequitable

conduct with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1328. "Moreover, although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Id. at 1328-29.

In this case, Evonik states that it meets the pleading requirements under Exergen and Rule 9(b). Specifically, Evonik pleads that Steven Nolan, Ph.D. (Professor of Chemistry), Mark S. Trimmer, Ph.D. (executive vice president of Materia Inc.), and Mark Warzel (patent agent for Materia Inc.) withheld information from the PTO. Evonik alleges that they never informed the PTO that work Nolan claimed to have invented in connection with the '590 Patent was instead derived from Nolan's time spent with Professor Robert Grubbs while at the California Institute of Technology ("Caltech"). Evonik alleges that during 2007, after Materia entered into a patent license agreement with UNOF (regarding certain methods or compositions attributed to Nolan), it participated in the prosecution of the '590 Patent but did not inform the PTO that Nolan did not invent the subject matter

12

claimed.

Evonik also alleges that in 2003, in a different court proceeding, Grubbs submitted a declaration stating that "Considering the level of [Nolan's] involvement in my lab, it would be impossible for Prof. Nolan to separate out his individual ideas and work from what he learned as a result of our collaboration and his time at Caltech." Evonik also relies on two motions submitted by Materia during an interference proceeding (a priority contest before the PTO to determine who was original inventor), one to correct the inventorship of Nolan's application and a second motion to challenge whether Nolan invented the subject matter.

Evonik pleads that the '590 Patent would not have issued but for the failure of at least Trimmer, Warzel or Nolan to disclose the Grubbs declaration or the facts concerning the challenge to Nolan's inventorship of the '590 Patent. Evonik argues that Materia has been making allegations for years to the PTO and in district court proceedings that Nolan was not the inventor of the '590 Patent, but that after Materia signed the license with UNOF and gained a certain interest in the '590 Patent, those allegations vanished and Materia failed to disclose this information to the PTO.[6]

---

[6] The issue was raised whether Grubbs' testimony taken in this case is biased now that his interests are aligned with Nolan and Materia. Grubbs now testifies that he has no concerns about

13

Materia argues that Evonik's inequitable conduct claim must fail because Evonik has not alleged facts showing that Nolan "derived" the invention claimed in the '590 Patent from Grubbs. Materia maintains that the Grubbs declaration does not provide evidence of derivation. Rather, Materia states that in his declaration Grubbs only criticized Nolan's behavior, specifically, that Nolan did not seek consent or credit Grubbs in any way. Materia states that Grubbs characterized Nolan's failure to seek consent as a breach of "academic custom" rather than of any legal obligation. Materia also argues that Evonik's reliance on Grubbs's testimony that graduate students found Nolan reading their research notebooks in the Caltech laboratory at night is faulty because Evonik does not allege that the notebooks disclosed any inventions claimed by Nolan in any patent or patent application.[7]

Materia argues that Evonik is alleging an inequitable conduct claim based on derivation, and that in order for Evonik

---

Nolan's inventorship. While the Court cannot make credibility determinations at this stage, see Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004), the Court may disregard self-serving testimony or affidavits. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). In any event, the Court takes all inferences in the light most favorable to the non-moving party. See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir.2005). At this stage, Evonik need only plead sufficient facts in support of its inequitable conduct claim. See Twombly, 127 S. Ct. at 1969 n.8; Iqbal, 129 S. Ct. at 1949.

[7] Evonik asserts that Nolan's time at Caltech did not involve research on metathesis catalysis, the subject of the '590 patent, while the notebooks of Grubbs's assistants reflected such work.

to prove derivation, it must allege facts supporting "complete conception" by Professor Grubbs of the specific compounds claimed in the '590 Patent. Materia argues that there is no evidence that Grubbs conceived of the specific compounds and, therefore, there can be no derivation claim and, without a derivation claim, there can be "but-for" materiality, an element required for inequitable conduct.

In response, Evonik argues that it is not required to allege facts showing that Grubbs is the inventor of the specific compounds claimed in the '590 Patent in order to state a claim for inequitable conduct. Evonik maintains that all it has to do is allege facts showing that Materia withheld information from the PTO that Nolan was not the inventor.

As stated, the two basic requirements to prove inequitable conduct are intent to deceive and materiality. See Therasense, 649 F.3d at 1290; Delano 655 F.3d at 1327 n.3 ("The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO.").

The intent and materiality requirements must be viewed separately. See Therasense, 649 F.3d at 1290 ("A district court

15

should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa."). The materiality required is "but-for" materiality. See id. at 1291. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." Id.

Materia has not challenged Evonik's facts concerning the "intent" requirement based on its allegations that Trimmer, Warzel or Nolan failed to disclose the Grubbs declaration or the facts concerning the challenge to Nolan's inventorship of the '590 Patent to the PTO. Rather, Materia is challenging Evonik's allegations that the information not disclosed was material. Materia argues that Evonik has not shown but-for materiality because it has not alleged facts showing that Grubbs is the true inventor rather than Nolan.

At this stage of the proceedings, the pleading stage, requiring proof of the true inventor of the '590 Patent is premature. What Evonik needs to plead, and has plead, is that the PTO would not have allowed the patent to be issued had it known of Materia's prior challenges to Nolan's inventorship. At this stage, such allegations meet the pleading requirements. The determination of whether Nolan, Grubbs, or someone else, is the true inventor is a determination that will require extensive

reliance on documents outside of the pleadings and likely be the subject of further proceedings. See Southern Cross, 181 F.3d at 426 (a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice). The Court does not decide the merits of the claim at this stage, only whether materiality has been properly alleged with sufficient particularity. See XpertUniverse, Inc. v. Cisco Systems, Inc., --- F.Supp.2d ----, No. 09-157, 2012 WL 2335938, at *5 (D.Del., Jun. 19, 2012) (finding claim of inequitable conduct properly plead where defendant "specifically identified the alleged patent application and its date of publication, and alleged that it constitutes a printed publication sufficient to trigger the printed publication bar" and, therefore, the court "can reasonably infer that but for the alleged omission of this published patent application, the Examiner would not have issued the patents in suit.").

Accordingly, Evonik has sufficiently plead a claim for inequitable conduct. Materia's motion to dismiss will be denied, and the decision of the Magistrate Judge will be affirmed.

## C. Timeliness of Motion to Amend

Materia also argues that the Order of the Magistrate Judge granting Evonik's motion to amend was in error because the motion was filed more than five months after the deadline for

17

such motions.

The Magistrate Judge found that Evonik demonstrated sufficient diligence and found good cause to permit the late filing. (12/13/11 Op. at 8). The Magistrate Judge found that although some information suggesting an inequitable conduct claim may have existed prior to February 1, 2011, the deadline to file motions to amend, the information was incomplete. (Id.). Depositions of Grubbs and Trimmer were not held until May 2011 and the motion to amend was filed shortly thereafter. The Magistrate Judge found it prudent that Evonik waited until after it had the factual support it needed to amend its counterclaim. The Magistrate Judge also found that the depositions could not reasonably be taken earlier because of incomplete document production and scheduling difficulties.

A district court judge will only reverse a magistrate judge's opinion on pretrial matters if it is "clearly erroneous or contrary to law." See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72. 1(c)(1)(A). A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law. Gunter v. Ridgewood Energy Corp., 32 F. Supp. 2d 162, 164 (D.N.J. 1998).

There are no grounds to overturn the Magistrate Judge's decision to permit Evonik to file a motion to amend beyond the deadline. Accordingly, the decision shall be affirmed.

**III. CONCLUSION**

For the foregoing reasons, Materia's motion to dismiss will be denied and the Magistrate Judge's Order will be affirmed. An appropriate Order will be entered.


                                           s/Noel L. Hillman
                                          NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

Dated: September 28, 2012