**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---

|                          |   |                           |
|--------------------------|---|---------------------------|
| Evonik Degussa GmbH,     | : |                           |
|                          | : | Civil Action No.          |
|                          | : | 09-cv-636 (NLH/JS)        |
|          Plaintiff,      | : | (consolidated with        |
|        v.                | : | 10-cv-200)                |
|                          | : |                           |
| Materia Inc.,            | : | **OPINION**               |
|                          | : |                           |
|          Defendant.      | : |                           |
|                          | : |                           |

---

**Hillman, District Judge.**[1]

   This is a patent infringement action.  Before the Court is
a motion for partial summary judgment filed by Plaintiff Evonik
Degussa GmbH ("Evonik").  Evonik argues that defendant Materia,
Inc. ("Materia") is precluded from raising claims or defenses in
this litigation that were decided in a previous patent
Interference proceeding before the United States Patent and
Trademark Office.  For the reasons that follow, Evonik's motion
will be granted in part and denied in part.

---

   [1]   United States District Court Judge for the District of
New Jersey, sitting by designation.

1

## I.   JURISDICTION

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1338(a), federal jurisdiction for matters arising under federal patent law.

## II.   BACKGROUND

### A.   The Patents

The Court previously set forth the factual background of this case in its <u>Markman</u> Opinion dated September 30, 2013. Accordingly, the Court sets forth here only those facts relevant to the present motion for partial summary judgment.

There are three patents at issue in this matter: (1) U.S. Patent No. 7,378,528 ("'528 Patent"); (2) U.S. Patent No. 7,652,145 ("'145 Patent"); and (3) U.S. Patent No. 7,622,590 ("'590 Patent").  Evonik's motion concerns only the '145 and '528 Patents.  The '145 Patent was issued to Wolfgang Anton Herrmann, Wolfgang Schattenmann, and Thomas Weskampp on January 26, 2010, and assigned to Evonik.  The '528 Patent was also issued to Herrmann, Schattenmann, and Weskampp on May 27, 2008, and subsequently assigned to Evonik.

### B.   The Subject Matter

The subject matter of the patents at issue in this

2

infringement proceeding is directed toward (1) compounds that serve as catalysts in olefin methathesis as well as (2) the reaction process to prepare olefins itself.  Olefins are chemical compounds containing at least one double bond connecting carbon atoms.  Metathesis reactions, also known as double deplacement reactions, occur where two chemical compounds react resulting in an exchange of bonding partners.  Thus, "[o]lefin metathesis involves the formal exchange of the carbene (divalent carbon, or $R_2C$) groups between two olefins."  Olefins are used in many areas of chemistry, ranging from polymerization reactions to natural product synthesis.

### C.   Procedural History

Evonik brought an action against Materia on August 26, 2009, alleging that Materia infringed upon the '528 Patent assigned to Evonik.  Subsequently, on March 11, 2010, Evonik brought another patent infringement suit against Elevance Renewable Sciences, Inc. ("ERS"), which included allegations that ERS and Materia both infringed upon the '528 Patent and '145 Patent.[2]  Following the consolidation, and in response to Evonik's second complaint, Materia joined UNOF as a third-party,

---

[2]     ERS subsequently settled its dispute with Evonik and is no longer a party to the present lawsuit.

3

and the two filed a counterclaim against Evonik alleging (1)
invalidity and unenforceability of Evonik's '145 Patent; (2)
unenforceability of Evonik's '528 Patent; (3) and infringement
and willful infringement of the '590 Patent that had been
assigned to the University of New Orleans Foundation and
licensed to Materia.  In responding to Materia's counterclaim,
Evonik alleged invalidity and unenforceability of Materia's '590
Patent.

Subsequently, the Court heard argument on the issue of
claim construction in a Markman hearing held on July 20, 2011.
Based on the hearing and extensive briefs filed on the issue,
the Court issued its Markman Opinion, in which it resolved the
meaning of several disputed terms in the patent claims at issue.[3]

_____

[3]   Specifically, in the Markman Opinion, the Court
construed: (1) the term "N-heterocyclic carbene" or "NHC" in the
'528 Patent and '145 Patent as: "a carbene having a molecular
structure that comprises at least one ring containing at least
one nitrogen atom in the ring;" (2) the term "and" in the '528
Patent and '145 Patent as  R1, R2, R3, and R4 in the Formulae
II, III, IV and V may be identical or different to one another,
and may each be a hydrogen or a hydrocarbon.  Additionally, R3
and R4 may also be halogen, nitro, nitroso, alkoxy, aryloxy,
amido, carboxyl, carbonyl, thio or sulfonyl.  R3 and R4  may
not, however, be both a hydrogen or hydrocarbon and also a
halogen, nitro, nitroso, alkoxy, aryloxy, amido, carboxyl,
carbonyl, thio or sulfonyl; (3) the term "neutral electron
donor" in the '145 Patent as: "an uncharged molecular groups that tends
to transfer electron density from a lone electron pair to
another separate atom or molecular group;" and (4) the term
"aryl" in the '590 Patent as: "an aromatic hydrocarbon in which

Following the issuance of the Markman Opinion, third-parties University of New Orleans Foundation and the University of New Orleans Research and Technology Foundation filed a motion pursuant to Federal Rule of Civil Procedure 21, to be dropped as parties from this litigation.  The Court granted the motion in an Order dated September 30, 2013.

Evonik then filed the instant motion for partial summary judgment against Materia based on issue preclusion and claim preclusion concerning the '145 and '528 Patents.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56).  An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc.,

---

at least one hydrogen has been removed."

477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A

fact is "material" if, under the governing substantive law, a

dispute about the fact might affect the outcome of the suit.

Id.  "In considering a motion for summary judgment, a district

court may not make credibility determinations or engage in any

weighing of the evidence; instead, the nonmoving party's

evidence 'is to be believed and all justifiable inferences are

to be drawn in his favor.'"  Marino v. Indus. Crating Co., 358

F.3d 241, 247 (3d Cir.  2004) (citing Anderson, 477 U.S. at

255).

     Initially, the moving party bears the burden of

demonstrating the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment

always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying

those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact." (citation omitted); see

also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d

Cir.  2001) ("Although the initial burden is on the summary

judgment movant to show the absence of a genuine issue of

material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading [s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.  2001) (internal quotations omitted).  For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.

**IV. ANALYSIS**

7

In its motion for partial summary judgment, Evonik argues
that Materia should be precluded under theories of issue
preclusion and claim preclusion from re-litigating issues and
asserting claims that were previously litigated before the
United States Patent and Trademark Office ("USPTO") Board of
Patent Appeals and Interferences (hereinafter collectively
referred to as the "Board").[4]  Specifically, Evonik contends that
Materia is barred from reasserting that Evonik's patents are not
entitled to the benefit of the filing date of its German
Application date for priority purposes.[5]  Evonik additionally

---

[4] Under the Leahy-Smith America Invents Act ("AIA"),
effective September 16, 2012, the statute is amended such that
the Board of Patent Appeals and Interferences is now referred to
as the Patent Trial and Appeal Board.  35 U.S.C. § 6 (2011).
Because the interference proceeding occurred prior to the
effective date of the amendment, the Court refers to the
administrative body as the Board of Patent Appeals and
Interferences.

[5] Under U.S. patent law, the priority date is a crucial
element in determining patent validity because it delineates the
cutoff for prior art.  See Star Scientific, Inc. v. R.J.
Reynolds Tobacco Co., 655 F.3d 1364, 1372 (Fed. Cir. 2011).
References preceding the priority date are considered prior art
and may be used to challenge a patent on various grounds
including novelty, enablement, and obviousness.  Generally, a
patent application's priority date is the date on which the
application was filed with the USPTO.  Under some circumstances,
however, a patent application may claim a priority date that
precedes its own filing date.  For example, with certain
limitations, continuation, divisional, and continuation-in-part
applications may claim priority to the filing date of their
respective parent applications.  See Transco Products Inc. v.

seeks to preclude Materia from re-litigating its challenge to the patentability of Evonik's claims based on 35 U.S.C. § 112 (enablement and written description).  Finally, Evonik argues that Materia is precluded from raising new invalidity claims pursuant to 35 U.S.C. §§ 102 and 103 since it chose not to raise these arguments in the Interference proceeding out of self-interest.  The Court will consider the nature of the Interference proceedings, applicability of issue and claim preclusion, and then address whether issue preclusion or claim preclusion bars Materia's claims concerning either priority or validity.

## A. Interference Proceeding

### 1. Generally

Interference proceedings occur in situations where the grant of a patent for a patent application under examination by the USPTO "would interfere with any pending application, or with any unexpired patent" because the claims are for "the same or

---

Performance Contracting, Inc., 38 F.3d 551, 557 (Fed. Cir. 1994).  Specifically, "a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application." PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1306 (Fed. Cir. 2008) (quoting In re Chu, 66 F.3d 292, 297 (Fed. Cir. 1995)).

substantially the same subject matter."[6]  35 U.S.C. § 135 (2006);
see Human Genome Sciences, Inc. v. Amgen, Inc., 553 F. Supp. 2d
353, 355 (D. Del. 2008) aff'd, No. 07-526SLR-MPT, 2008 WL
5245979 (D. Del. Dec. 16, 2008) ("An interference is an inter
partes administrative proceeding to determine which party first
invented the subject matter of the interference as defined by
the interference 'count.'").  In an interference proceeding, the
Board creates one or more counts to identify subject matter that
is common to both the pending patent application and the issued
patent or patent application with which it is claimed to
interfere.  See Creative Compounds, LLC v. Starmark Labs., 651
F.3d 1303, 1310 (Fed. Cir. 2011).  The Board "shall determine
questions of priority of the inventions and may determine
questions of patentability."  35 U.S.C. § 135 (2006); see Gen.
Instrument Corp., Inc. v. Scientific-Atlanta, Inc., 995 F.2d
209, 210 (Fed. Cir. 1993) (discussing Board decisions in
interference proceedings in the context of both priority of

---

[6]  Under the AIA, interference proceedings will eventually
be phased out and replaced by "first to file" or derivation
proceedings.  Because the derivation provision applies only to
patent applications filed after March 16, 2013, and because the
patent applications at issue were all filed before that date,
the Court reviews the Board's ruling in accordance with statutes
and procedures in effect at the time of litigation.

invention and patentability).

At the time the parties engaged in the Interference proceeding, patent interference procedures were governed by 37 C.F.R. § 41.100-41.208 (2006).  The Federal Rules of Evidence generally apply to interference proceedings.  37 C.F.R. § 41.152 (2006).  Furthermore, there is opportunity for limited discovery.  37 C.F.R. § 41.150 (2006).  Exhibits, including affidavits, deposition transcripts, documents, and objects may be submitted into evidence.  37 C.F.R. § 41.154 (2006). Moreover, testimony including direct and cross-examination of witnesses may be conducted.  37 C.F.R. § 41.157 (2006).

### 2. '364/'365 Interference Proceeding

Between September 2005 and September 2006, Evonik and Materia were parties to an Interference proceeding before the USPTO which consolidated Patent Interference Nos. 105,364 and 105,365 (the "Interference" or the "'364/'365 Interference"). To determine the priority of invention, the Board creates a "count."  "The count of an interference is merely the vehicle for contesting the priority of invention and determining what evidence is relevant to the issue of priority."  In re Van Geuns, 988 F.2d 1181, 1184 (Fed. Cir. 1993) (citing Squires v. Corbett, 560 F.2d 424, 433, 194 USPQ 513, 519 (CCPA 1977); Case

11

v. CPC Int'l, Inc., 730 F.2d 745, 749, 221 USPQ 196, 200 (Fed.Cir. 1984)).  "Although claims of one or more of the parties may be identical to the count of an interference, the count is not a claim to an invention." Id. (citing Case, 730 F.2d at 749, 221 USPQ at 200).

The two Counts pertinent to this litigation decided by the Board were: (1) that Evonik (Herrmann) was entitled to the benefit of Herrmann's German priority date; and (2) that Evonik's claims were patentable under 35 U.S.C. § 112.  Materia did not appeal the Board's decision.

### 3. **Preclusive Effect of USPTO Proceedings**

Generally, courts have recognized the preclusive effect of administrative agencies when the "agency is acting in a judicial capacity." United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966) (finding that "[w]hen an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").  The Board of Patent Appeals and Interferences is an administrative law branch of the USPTO. See Kappos v. Hyatt, 132 S. Ct. 1690, 1692 (2012) (discussing the process of "administrative appeal with the PTO's Board of

Patent Appeals and Interferences"); In re Sullivan, 362 F.3d 1324, 1326 (Fed. Cir. 2004) (discussing the applicability of the Administrative Procedure Act to Board decisions).

The United States Court of Claims stated that rulings by the Board that were not appealed to federal court are deemed final and thus have potential preclusive effect.[7]  Coakwell v. U.S., 292 F.2d 918, 920 (Ct. Cl. 1961) (concluding that "[w]here the losing party fails to effectively review the Patent Office action in one of the courts and it becomes final, it is equally binding on the parties ... [and] has the same finality as the judgment of either of the courts would have had if one of them had reviewed it.").  Specifically, the Coakwell Court held that a ruling by the Board, in an interference proceeding, regarding priority of invention should be given preclusive effect and the defendant should be barred from re-litigating "an issue already litigated and finally decided." Id. at 921; see Abbott GMBH & Co., KG v. Centocor Ortho Biotech, Inc., 870 F.Supp.2d 206, 222-23 (D.Mass. 2012) (finding that BPAI or USPTO decisions have

---

[7]  All holdings of the Court of Claims announced before the close of business on September 30, 1982 were adopted as precedent by the United States Court of Appeals for the Federal Circuit.  S. Corp. v. United States, 690 F.2d 1368, 1370 (Fed. Cir. 1982).

preclusive effect).  Thus, as a threshold matter, the Court

concludes that decisions by the Board in an interference

proceeding can be subject to preclusion.  Accordingly, the Court

now looks to whether issue preclusion and claim preclusion apply

in this matter.

**B. Issue Preclusion**

**1. Generally**

Issue preclusion, also known as collateral estoppel, bars

the re-litigation of an issue of fact or law that was previously

litigated and decided.  See Burlington N. R.R. v. Hyundai Merch.

Marine Co., 63 F.3d 1227, 1232 (3d Cir. 1995).  The Court of

Appeals for the Third Circuit and the Court of Appeals for the

Federal Circuit both impose four requirements:[8] (1) the issue

must be identical to an issue previously adjudicated; (2) the

issue must have been actually litigated; (3) the determination

---

[8]   Although patent infringement suits brought in federal
district court pursuant to 28 U.S.C. § 1338 have a right of
appeal to the Court of Appeals for the Federal Circuit, for
rules of law that do not have special application to patent
cases, the Federal Circuit applies "the law of the regional
circuit in which the district court sits."  Media Techs.
Licensing, LLC. v. Upper Deck Co., 334 F.3d 1366, 1369 (Fed.
Cir. 2003) (citing Hartley v. Mentor Corp., 869 F.2d 1469, 1471
n.1 (Fed. Cir. 1989) for the proposition that the "application
of principles of res judicata is not a matter committed to the
exclusive jurisdiction of this court [the Federal Circuit].").

of the issue must have been necessary to the prior judgment; and
(4) the party against whom preclusion is now asserted must have
had a full and fair opportunity to litigate the issue.  Henglein
v. Colt Indus., 260 F.3d 201, 209 (3d Cir. 2001); In re Freeman,
30 F.3d 1459, 1465 (Fed. Cir. 1994).  Additionally, the Supreme
Court has confirmed the applicability of issue preclusion to
patent infringement cases.  See Blonder-Tongue Laboratories,
Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971).
Moreover, issue preclusion may be non-mutual and thus may be
used by a party who was not a party to or in privity with a
party to the previous action.  See id. at 323-25; see also
Hartley v. Mentor Corp., 869 F.2d 1469, 1470-71 (Fed. Cir. 1989)
(stating that "mutuality of estoppel or privity is not required
for a third party to invoke collateral estoppel").

Evonik contends that issue preclusion applies to two
issues: priority and validity.

## 2. Issue Preclusion of Priority

Evonik argues that Materia is precluded from re-litigating
Evonik's entitlement to its German priority date as awarded
during the Interference proceeding.  Materia argues that the
standard by which the Board granted the German priority date as
to the *count* differs substantially from the standard before this
Court for determining whether the *claims* of the '145 and '528

15

Patents should be accorded benefit under 35 U.S.C. § 119.
Materia also argues that the claims asserted by Evonik in this
litigation cover a broader scope (full scope of the claims) than
the subject matter in the Interference (one embodiment of the
count).  Evonik replies that priority was already litigated
during the Markman hearing and that the Court found that
Evonik's German application supports the full scope of NHCs (N-
heterocyclic carbenes) covered by the '528 patent claims.

 "Priority of an invention is a question of law to be
determined based upon underlying factual determinations."
Innovative Scuba Concepts, Inc. v. Feder Indus., Inc., 26 F.3d
1112, 1115 (Fed.Cir. 1994) (citing Price v. Symsek, 988 F.2d
1187, 1190 (Fed.Cir. 1993)).  To determine whether Materia is
barred from litigating the priority of invention issue, the
Court applies the four elements of issue preclusion.

 First, the Court considers whether the issue of priority
raised in the current proceeding is identical to the issue of
priority before the Board.  In the Interference proceeding, the

Board awarded Evonik[9] priority of invention over Grubbs[10] and accorded Evonik's 10/630,552 and 11/021,967 applications (the '552 and '967 Applications) the benefit of the April 6, 1998 filing date of the DE 198 15 275 application ("German Application"). The '967 Application issued as the '145 Patent, at issue in this case.[11] The other patent at issue, the '528 Patent, was issued after the conclusion of the Interference proceeding. Materia argues that Evonik's '145 and '528 patents are invalid because, _inter alia_, they should not be entitled to

---

[9] Although the named parties to the Interference were Robert H. Grubbs and Wolfgang Anton Herrmann, the Board determined that the real parties in interest were the California Institute of Technology and Degussa, AG, respectively. As noted by Evonik in its brief and admitted by Materia in its initial cross motion, Herrmann assigned his interest [in the pending patent applications] to Degussa AG, which became Evonik Degussa GmbH, or Evonik. Therefore, the Court substitutes all subsequent references to Herrmann with Evonik when referencing the Interference proceeding.

[10] Because mutuality of parties is not required for issue preclusion to apply, the Court does not consider the question of whether Materia was in privity with Grubbs in the prior interference proceeding at this stage of the analysis. Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 350 (1971). However, as discussed in the section on claim preclusion _infra_, the Court finds Materia was in privity with Grubbs.

[11] '552 Application issued as U.S. Patent No. 7,294,717 (the '717 Patent). The '717 Patent is not directly at issue in this case. Rather, it shares the same parent application as the two patents at issue in this case.

the priority date of the German Application.

Priority determinations are governed by 35 U.S.C. § 119.[12] Under § 119, "an applicant may antedate prior art by relying on the benefit of a previously filed foreign application to establish an effective date earlier than that of the reference." In re Gosteli, 872 F.2d 1008, 1010 (Fed. Cir. 1989) (citing In re Wertheim, 541 F.2d 257, 261 (C.C.P.A. 1976)).   In other words, "when the priority claim is based on subject matter disclosed in a foreign patent application whose filing date is properly claimed, 35 U.S.C. § 119(a),[13] the foreign application has the same effect as if filed in the United States."   Frazer v. Schlegel, 498 F.3d 1283, 1287 (Fed. Cir. 2007).

There is, however, an essential distinction between

---

[12]   Although not applicable here, 35 U.S.C. § 120 also deals with priority determinations. Under Section 120, an applicant may rely on a previously filed U.S. application to establish an earlier effective date as long as certain requirements are satisfied.   See In re Chu, 66 F.3d 292, 297 (Fed. Cir. 1995) (citing Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1566 (Fed. Cir. 1993)).

[13]   35 U.S.C. § 119(a) "provides that an application is entitled to the benefit of the filing date of an earlier foreign application, subject to certain limitations and conditions." Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1324 n.5 (Fed. Cir. 2008).   These limitations and conditions include sufficiency of disclosure under 35 U.S.C. § 112, first paragraph and filing the U.S. patent application within twelve months of the foreign filing.   35 U.S.C. § 119(a) (2006).

determining priority of invention for interference purposes and assigning benefit to a foreign filing for purposes of antedating prior art references in a patent infringement case.  To establish constructive reduction to practice in an interference proceeding, at least one embodiment within the interference "count" must be present and adequately described in the earlier patent application that is relied upon.  See Falko-Gunter Falkner v. Inglis, 448 F.3d 1357, 1362 (Fed. Cir. 2006) (citing Hunt v. Treppschuh, 523 F.2d 1386, 1389 (C.C.P.A. 1975)).

In a patent infringement case, when a party seeks to rely on its foreign filing date for purpose of priority to antedate potential patent-invalidating prior art, that party must prove that "the asserted claims are entitled to the benefit of the foreign filing dates."  Purdue Pharma Products L.P. v. Par Pharm., Inc., 642 F. Supp. 2d 329, 369 (D. Del. 2009) dismissed, 370 F. App'x 80 (Fed. Cir. 2009) and aff'd, 377 F. App'x 978 (Fed. Cir. 2010) (citing Tech. Licensing Corp. v. Videotek, Inc., 545 F.3d 1316, 1327, 1329 (Fed. Cir. 2008)).

Thus, in contrast to an interference proceeding, where benefit is granted with respect to one or more counts, here, Evonik seeks benefit with respect to its patent claims.  In order to fulfill its burden for receiving the benefit of its patent claims in a prior application, Evonik must "show not only

19

the existence of the earlier application, but why the written description in the earlier application supports the claim." Tech. Licensing Corp., 545 F.3d at 1327.

Therefore, the standard applied in this litigation is different from that applied in the Interference proceeding. See In re OxyContin Antitrust Litigation, --- F.Supp.2d ----, 2014 WL 128013, at *38 (S.D.N.Y. Jan. 14, 2014) ("issues are not identical when the legal standards governing their resolution are significantly different.") (citing Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 371 (2d Cir. 1997); Restatement (Second) of Judgments § 28(4)).

Despite the difference in the applicable standard, Evonik argues that the same issue – that it is entitled to its German priority date – was actually litigated in the Interference proceedings.  Materia argues that the issue is not identical and that the scope is broader in this litigation.  Specifically, that Evonik's claims for the '145 and '528 patents in this litigation recite broader subject matter than counts in the Interference.

The broader scope of the '145 and '528 patents creates significant differences.  Herrmann/Evonik participated in the '364/'365 Interference concerning NHC with a double bond, but did not participate in the interference concerning NHC without a

double bond.  The '145 and '528 Patents in this litigation

concern NHC with and without a double bond.  The '145 and '528

patents include "substituted hydrocarbon group" which is broader

than the "hydrocarbon group" in the Interference.  For the '145

and '528 Patents, the hydrocarbon group, as well as the addition

of silyl radicals, in $R^1$ and $R^2$ may be substituted by various

chemical groups.[14]  Further, Evonik amended his patent

application after the Board's decision so that the claims of the

'145 Patent are different than those in the Interference.  The

'528 Patent was filed ten months after the Board decision, and

stated that the applicant claims a "broad genus."  Therefore,

Materia did not have an opportunity to "litigate" regarding the

broader definition and applicability of NHC to certain formulas

(II-IV).  See MSM Investments Co. v. Carolwood Corp., 70

F.Supp.2d 1044, 1051 (N.D.Cal. 1999) (Finding patent claims

broader in scope and that plaintiff had no opportunity to

litigate determinative issue so that collateral estoppel did not

apply).

_____

[14] Materia also argues that Evonik's claims pending during
the Interference state that "$R^1$ and $R^2$ contain a ring" while its
patent claims in the issued patents state that "$R^1$ and $R^2$ form a
ring."  $R^1$ and $R^2$ represent chemical substituents on the general
chemical compound.  Specifically, they represent either hydrogen
or a hydrocarbon group.  The Court agrees with Evonik that to
the extent that this is new claim construction challenge, it is
untimely and the Court will not consider it.

Evonik states that its specification in the Interference proceeding is the same as the '528 patent specification and is a translation of Evonik's German application.  Although '528 may be a divisional patent, it is broader in scope than the patents before the Board.  Even though Evonik argues that patent applications involved in the Interference were the parent and grandparent of the '528 Patent, thereby operating as divisional applications having the same specifications, Evonik expanded the scope of the Patents.

Evonik further argues that Materia lost its § 112 challenge at the Interference and that the Board found that Evonik's specification fully enabled the full scope of the claims that Materia challenged.  Evonik also argues this Court found in its Markman Opinion an interpretation of Evonik's application that NHC is broader than just formulas II-IV.

In its Markman Opinion, the Court considered documents submitted in support of Evonik's original application and considered by the Board during the Interference and determined that there was no intention to limit the scope of NHC. Specifically, the Court determined that the evidence found in the prosecution history showed that NHC was not limited to Formulae II-V, but was broader in scope.

Nonetheless, even given the Court's broader interpretation

22

of NHC in the Interference proceeding than what Materia
suggests, "unlitigated" issues remain with regard to the
definition and applicability of NHCs.  Evonik has not
established that the issue at the Interference proceeding is
identical to the one before the Court.  Whether Evonik is
entitled to rely on its foreign filing date for purposes of
priority in this case rests on a finding that each of its
present patent claims is sufficiently described and enabled by
its foreign application.  That finding was not made in the prior
Interference proceeding, and thus the issue of priority here is
not identical to the issue of priority in the Interference
proceeding.

Evonik counters that there is no requirement that the
issues be "identical."  See Ohio Willow Wood Co. v. Alps South,
LLC, 735 F.3d 1333, 1342 (Fed. Cir. 2013). ("Our precedent does
not limit collateral estoppel to patent claims that are
identical.  Rather, it is the identity of the issues that were
litigated that determines whether collateral estoppel should
apply." ) (citing Bourns, Inc. v. U.S., 210 Ct.Cl. 642, 537 F.2d
486, 491 (1976); Westwood Chem., Inc. v. U.S., 207 Ct.Cl. 791,
525 F.2d 1367, 1372 (1975)).  However, in Ohio Willow Wood, the
Court determined that although the patent language was not
identical, it described "substantially the same invention."

Here, Evonik has not shown that the counts considered by the Board are identical, or substantially the same, as the claims regarding the '145 and '528 Patents, as they evolved following the Interference proceeding, now before this Court.

With regard to the remaining elements, since the issue is not identical, it cannot be found that the issue was "actually litigated."  Although determination of priority was necessary in the Interference proceeding, and Materia did have a full and fair opportunity to litigate in the Interference,[15] the issue of priority in the present matter is not identical to the issue of priority before the Board during the Interference proceeding. For that reason, Evonik is not entitled to preclude Materia on the issue of priority of invention.

Thus, Evonik's motion is denied insofar as it seeks to preclude Materia from litigating the issue of priority of invention under the theory of issue preclusion.

### 3. Issue Preclusion of Validity – 35 U.S.C. § 112

Under section 112 of the patent statute, a patent specification must contain "a written description of the invention, and of the manner and process of making and using it

_____

[15] Materia did not present facts opposing the third and fourth elements.

24

... [such] as to enable any person skilled in the art to which it pertains, ... to make and use the same...." 35 U.S.C. § 112, ¶ 1 (2006).  Accordingly, two separate and independent requirements must be satisfied: "an applicant must both describe the claimed invention adequately and enable its production and use."  Alcon Research Ltd. v. Barr Laboratories, Inc., 745 F.3d 1180, 1188 (Fed. Cir. 2014) (citing Ariad Pharm., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1344 (Fed.Cir. 2010) (en banc); Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1562-63 (Fed.Cir. 1991)). "[P]atents are presumed to be valid and overcoming this presumption requires clear and convincing evidence."  Id. (citing 35 U.S.C. § 282; Microsoft Corp. v. i4i Ltd., --- U.S. ----, 131 S.Ct. 2238, 2242, 180 L.Ed.2d 131 (2011); Ariad, 598 F.3d at 1354).[16]

The same four elements of issue preclusion applied to priority, are applied to determine if Materia is precluded from

---

[16] In an interference proceeding before the Board, the preponderance of evidence standard governs questions of patentability, whereas in an infringement case, clear and convincing evidence is necessary to prove patent invalidity. See Velander v. Garner, 348 F.3d 1359, 1369-70 (Fed. Cir. 2003); see also Radio Corp. of Am. v. Radio Eng'g Labs., 293 U.S. 1, 2 (1934) (concluding that the "presumption [of patent validity should] not to be overthrown except by clear and cogent evidence.").

asserting a validity challenge.  First, the Court considers whether there is identity of issue.  In the Interference proceeding, the Board rejected Grubbs' patentability arguments regarding Evonik's pending patent applications.  Specifically, Grubbs argued that several claims of Evonik's '552 and '967 Applications were unpatentable for lack of an adequate written description and for lack of an enabling disclosure in the corresponding specifications.  In the present case, Materia asserts, as an affirmative defense and counterclaim, that Evonik's '528 Patent is invalid for failure to comply with the requirements for patentability as set forth in 35 U.S.C. § 112.  In its opposition brief, Materia argues that "[t]hough validity was raised in the interferences, it was raised with respect to different patent claims ... than those Evonik now asserts."  The mere fact that the patent claims differ, however, is not dispositive in determining whether identity of issue exists for issue preclusion purposes.  Whether patent claims are the same or distinct has particular applicability to patent law and therefore Federal Circuit law applies.  See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc., 672 F.3d 1335, 1341 n.1 (Fed. Cir. 2012); Ohio Willow Wood Co., 2013 WL 6037196, at *5 (citing Bourns, 537 F.2d at 493) ("If the differences between the unadjudicated patent claims and adjudicated patent claims do not

26

materially alter the question of invalidity, collateral estoppel applies."). To determine whether the change in patent claims creates a new issue of patent validity with respect to § 112, the scope of the claims must be analyzed. If the scope of a subsequent patent claim differs from that of a prior patent claim, a new issue of patent validity exists with respect to whether the subsequent patent claim is properly enabled under 35 U.S.C. § 112.

As explained in the Court's discussion on priority, the scope of the patent claims asserted in this litigation are broader than those asserted in the Interference proceeding. As noted by Evonik, the concept of priority and §112 are closely related: Section 112 asks whether the specification provides adequate written description and whether it enables the scope of the patent claim, and priority asks when was this support first provided.[17]

For the same reasons the Court explained in its discussion on priority, Evonik has not established that the issue of patent validity with respect to §112 is identical to the issue previously adjudicated. Therefore, the first element of issue

---

17 Section 119(a) provides that an application is entitled to the benefit of the filing date of an earlier foreign application, subject to certain limitations and conditions including sufficiency of disclosure under 35 U.S.C. § 112.

preclusion is not satisfied.  With regard to the remaining
factors, although the Court found in its Markman Opinion that
the broader interpretation has support in the prosecution
history during the Interference, that is not to say that Materia
had an opportunity to challenge during the Interference the
validity of a broad genus scope (NHC with and without a double
bond).  Therefore, the second element is not satisfied.

    Although Evonik can prove the third element that the issue
of patentability was essential to the Board's ruling,[18] and that

---

    18   The Third Circuit has noted that "[t]he requirement
that a preclusive finding must have been necessary to a judgment
is rooted in principles of fairness."  Jean Alexander Cosmetics,
Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 250 (3d Cir. 2006).
The determination of an issue is considered necessary if
"parties to litigation have sufficient notice and incentive to
litigate matters in earlier proceedings which may bind them in
subsequent matters[,]" the determination "receiv[ed] close
judicial attention[,]" and the issue was appealable and not
incidental to the decision.  See id. (quoting Wickham
Contracting Co., Inc. v. Bd. of Educ. of City of New York, 715
F.2d 21, 28 (2d Cir. 1983); Commercial Assocs. v. Tilcon
Gammino, Inc., 998 F.2d 1092, 1097 (1st Cir. 1993); Restatement
(Second) of Judgments § 27 cmt. h).  Materia argues that it was
not necessary because the Board is only obligated to determine
questions of priority of invention and "there is no requirement
that all patentability issues be raised."  See 35 U.S.C. §
135(a) (stating that "[t]he Board of Patent Appeals and
Interferences shall determine questions of priority of the
inventions and may determine questions of patentability.").
Although Materia is correct in its assertion that patentability
issues need not be raised, "the Board will decide all issues
fairly raised and fully developed during the interference,
including issues relating to patentability."  Schulze v. Green,
136 F.3d 786, 791 (Fed. Cir. 1998).

Materia had a full and fair opportunity to litigate,[19] the scope of the '528 Patent in this litigation is broader than the counts considered by the Board during the Interference proceeding.

### 4. Validity as Single Issue

Evonik also seeks to preclude Materia from asserting validity based on 35 U.S.C. § 102 (anticipation) and 35 U.S.C. § 103 (obviousness).  These theories of invalidity were not asserted by Materia during the Interference.

"A patent is invalid for anticipation under 35 U.S.C. § 102 if a single prior art reference discloses each and every limitation of the claimed invention." Allergan, Inc. v. Apotex Inc., --- F.3d ----, 2014 WL 2579287, at *3 (Fed. Cir. June 10, 2014) (citing Schering Corp. v. Geneva Pharm., 339 F.3d 1373, 1377 (Fed.Cir. 2003)).  "A patent is invalid for obviousness 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" Id. at *6 (citing 35 U.S.C. § 103(a)).  "The

---

19  Materia argues that it did not have a full and fair opportunity to litigate because discovery is limited in an Interference proceeding.  However, Grubbs/Materia elected not to appeal the Board's decision to the District Court which would have allowed for more extensive discovery.  Therefore, the fourth element of issue preclusion is satisfied.

presumption of a patent's validity under 35 U.S.C. § 282 can be rebutted by clear and convincing evidence." Id. at *3 (citing Microsoft Corp. v. i4i Ltd. P'ship, --- U.S. ----, 131 S.Ct. 2238, 2245-46, 180 L.Ed.2d 131 (2011)).

Evonik argues that Materia is precluded from raising §§ 102 and 103 arguments in this litigation because it chose not to assert such claims earlier out of self-interest.  Evonik argues that Materia, having obtained two patents on the same subject matter (via Grubbs), did not argue during the Interference that the patents were invalid because it would have meant taking inconsistent positions; arguing that the subject matter was patentable to Materia but not to Evonik.  Having lost the two patents as a result of the Interference proceeding, Materia in this litigation cites 25 separate references to suggest that Evonik's patent claims are invalid under 35 U.S.C. §§ 102 and 103.  Evonik argues that Materia should not be permitted to use self-interest as an excuse, and should be precluded from raising these claims.

Materia does not dispute that it chose not to raise §§ 102 and 103 challenges during the Interference.  Materia states that: "[A] party to an interference will have no incentive to challenge the other party's involved claims as invalid in view of prior art, as such challenges could vitiate the very rights

30

being fought over." Rather, Materia argues that since it never raised §§ 102 and 103 challenges, that it never "actually litigated" the issue and, therefore, issue preclusion cannot apply.

Issue preclusion prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment whether or not the issue arises on the same or a different claim." New Hampshire v. Maine, 532 U.S. 742, 748-49, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (citations omitted). It also prohibits successive or alternative theories of liability. Materia's §§ 102 and 103 claims are alternative theories on the issue of validity. Such alternative theories raised after the issue of validity had been previously raised were found to be precluded in Astrazeneca UK Ltd. v. Watson Labs., Inc. (NV), 905 F. Supp. 2d 596 (D. Del. 2012).

Whether patent validity is a single issue for preclusion purposes is an issue "particular to patent law," and thus the Federal Circuit's precedence is binding. See Hallco Mfg. Co., Inc. v. Foster, 256 F.3d 1290, 1294 (Fed. Cir. 2001). Although the Federal Circuit has yet to rule conclusively on this matter, a court in this District has recently considered the matter and concluded that the issue to be given preclusive effect is patent

31

validity in general.  Astrazeneca, 905 F. Supp. 2d at 602-03
(finding that because defendant sought to invalidate the patent
under theories of obviousness and improper reissue in previous
litigation, it is precluded from seeking to invalidate the
patent on other theories of invalidity).

    Similarly, other district courts have held that patent
validity constitutes a single issue for issue preclusion
purposes.  See Roche Palo Alto LLC v. Apotex, Inc., 526 F. Supp.
2d 985, 994-95 (N.D. Cal. 2007) aff'd, 531 F.3d 1372 (Fed. Cir.
2008) (concluding that "the relevant 'issue' which [d]efendants
are precluded from re-litigating is the ultimate determination
on patent validity itself."); Applied Medical Resources Corp. v.
U.S. Surgical Corp., 352 F. Supp. 2d 1119, 1124-26 (C.D. Cal.
2005) (applying the factors set out by the Restatement (Second)
of Judgments in determining that the validity of a patent claim
is a single issue for preclusion purposes); Meritor Transmission
Corp. v. Eaton Corp., No. 1:04CV178, 2006 WL 3951711 (W.D.N.C.
Sept. 26, 2006) aff'd, 258 F. App'x 320 (Fed. Cir. 2007) (noting
the Federal Circuit's reliance on the Restatement (Second) of
Judgments in "concluding that 'validity' is a sole issue to be
precluded"); Zip Dee, Inc. v. Dometic Corp., 905 F. Supp. 535,
537 (N.D. Ill. 1995) (distinguishing between patent validity,
which is a single issue and theories of patent validity, which

are arguments bearing on that issue).

Application of validity as a single issue is appropriate where a party seeks to assert an additional theory in support of its challenge.  For example, if a party unsuccessfully challenges validity on a theory of anticipation, then it would not be able to later mount an additional challenge under a theory of obviousness.  See Astrazeneca, 905 F.Supp.2d at 602-03 (using analogy that if A brought a negligence action against B on a theory that B was speeding, and lost, A could not later bring a negligence action based on another theory).

Here, Materia brought a § 112 validity action against Evonik in the Interference.  It now seeks to bring additional theories of validity pursuant to §§ 102 and 103.  This is exactly the scenario described in Astrazeneca which found such additional theories to be precluded.  Since Materia raised a validity challenge in the Interference, and validity is a single issue, Materia cannot later assert additional validity challenges under alternative theories of validity.  Accordingly, Evonik's motion is granted in part so that Materia's 35 U.S.C. §§ 102 and 103 claims are preempted.[20]

_____

20  Even though the claims are broader in this litigation than in the Interference proceeding, the §§ 102 and 103 claims are precluded. Although Materia should get an opportunity to litigate its § 112 challenge against the broader claim in this

**D. Application of Claim Preclusion**

**1.  Claim Preclusion – Generally**

Claim preclusion, also known as res judicata, bars the re-litigation of claims that were or could have been brought in a prior action.  See In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008) (citing Post v. Hartford Ins. Co., 501 F.3d 154, 169 (3d Cir. 2007)); Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp., 688 F.2d 166, 174 (3d Cir. 1982) (The doctrine of res judicata serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.") (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

The Third Circuit imposes three requirements for claim preclusion:[21] (1) there must have been a final judgment on the

---

litigation, it does not get to also raise new theories of validity that it failed to raise in the Interference.  The application of validity as a single issue is to prevent a losing party from mounting successive challenges.  Materia has not shown how the broadening of the claim supports a different theory of invalidity.  Rather, Materia is bringing §§ 102 and 103 claims now because it no longer holds the patents.

[21]  As stated previously by the Court, for rules of law that do not have special applicability to patent cases, the Federal Circuit applies the law of the regional circuit in which the district court sits.  See Media Techs. Licensing, LLC., 334 F.3d at 1369.

34

merits in a prior proceeding; (2) the current suit must involve
the same parties or those in privity with the parties to the
prior proceeding; and (3) the subsequent suit must be based on
the same cause of action as the prior proceeding.  See
CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187, 194 (3d
Cir. 1999) (quoting Bd. of Trustees of Trucking Employees of N.
Jersey Welfare Fund, Inc. - Pension Fund v. Centra, 983 F.2d
495, 504 (3d Cir. 1992)).  Additionally, the Supreme Court has
confirmed the applicability of claim preclusion to patent
infringement cases.  See Hart Steel Co. v. R.R. Supply Co., 244
U.S. 294, 297-98 (1917).

As with issue preclusion, the issue of the broader scope of
the claims in this litigation as compared to the Interference
proceeding defeats application of claim preclusion as to
priority and validity (§ 112 enablement and written
description).

**2. Priority**

Evonik argues that claim preclusion bars Materia from re-
litigating the issue of priority.  Evonik has presented
sufficient facts to show that the Interference was a final
judgment on the merits.  Materia chose not to appeal the
decision thus making it final.

Evonik has also presented sufficient facts to show that

35

Materia was in privity with Grubbs/Caltech.  In the
Interference, although Caltech was identified as the real party
in interest for the Grubbs patents, Caltech had exclusively
licensed its rights in these patents to Materia.  Under that
License Agreement, Materia was responsible for the prosecution
and maintenance of the Grubbs patents in the USPTO.  Materia
also had the right to "elect to have sole control" over the
defense of a validity challenge to the Grubbs patents as well as
the "first right" to sue for infringement.

    In addition to the License Agreement, Materia and Caltech
executed a Joint Defense Agreement ("JDA") specifically to cover
the Interference.  The JDA provided that: (1) Materia and
Caltech share "joint interests in prevailing in the
Interference"; (2) Materia had the right to approve of any
settlement of the Interference; and, (3) Materia was obligated
to pay the fees and expenses, which it did pay.  Materia was
involved in the Interference through its 30(b)(6) designee, and
Materia's counsel and one of its scientists attended the
Interference deposition of Evonik's expert.  Taken in
combination, all of these facts support a finding that Materia
was in privity with Grubb/Caltech.[22]

_____

    [22] Materia argues that control of the litigation is not
enough to create privity.  See Gillig v. Nike, Inc., 602 F.3d

36

Evonik has not, however, proven that this litigation is based on the same cause of action as the Interference.  Because this is an inquiry involving determinations involving substantive issues of patent law, Federal Circuit case law is applicable.  See Hallco Mfg. Co., 256 F.3d at 1294; see also Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed. Cir. 2008) (stating that "[w]hether two claims for patent infringement are identical is a claim preclusion issue that is particular to patent law").  In determining whether there is an identical cause of action, the Federal Circuit has adopted the transactional test.  See Foster v. Hallco Mfg., 947 F.2d 469, 478-79 (Fed. Cir. 1991).

Under a transactional analysis, courts turn to whether the two claims are "based on the same, or nearly the same, factual allegations."  Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360,

---

1354, 1362 (Fed. Cir. 2010) ("control of a party to the litigation through stock ownership or corporate officership is not enough to create privity, absent a showing that the corporate form has been ignored.").  This is a different situation than that in Gillig.  In Gillig, the lower court found privity because Gillig was an officer and the principal owner of the first company.  The Federal Circuit found that was not enough and for the "control of litigation" exception to apply, "it is necessary to establish that the stockholder/officer controlled the litigation and that his interests were represented by the party in the suit."  Here, Evonik has presented facts and documents that show that Materia controlled the litigation and their interests were fully represented during the Interference.

1363 (Fed. Cir. 2000) (quoting Herrmann v. Cencom Cable Assoc.,
Inc., 999 F.2d 223, 226 (7th Cir. 1993)) (citing Parsons Steel,
Inc. v. First Alabama Bank, 474 U.S. 518, 521 (1986)).  Thus,
the question here is whether the claim of infringement before
this Court arises out of the same set of transactional facts as
the determination of priority of invention in the interference
proceeding.

     Evonik provides little to no facts in support of its claim
preclusion arguments.  In its brief, it simply makes the
conclusory statement that "[t]here can be no legitimate dispute
that the acts, the relief sought and the material facts are all
identical whether Evonik's entitlement to the German priority
date is litigated before the Board or before this Court."
Evonik did not provide any further briefing after this statement
aside from a citation to a case which held that claim preclusion
applied to bar a prisoner's lawsuit.  See Byrd v. City of
Philadelphia, 245 Fed.Appx. 208 (3d Cir. 2007) (plaintiff
alleged claims of false arrest and imprisonment, involuntary
servitude, fraud, denial of due process, denial of equal
protection, and cruel and unusual punishment, all stemming from
his arrest, prosecution, and confinement as a result of his
convictions).

     Evonik conclusory statements are insufficient to establish

38

that Materia's claims are precluded under a theory of claim
preclusion.  Under the transactional test, the Court finds that
Evonik has not shown that the facts in this litigation arise out
of the same set of transactional facts as the determination of
priority of invention in the Interference proceeding.  In fact,
Evonik has not undertaken the analysis.  As such, Evonik has not
presented facts that show that Materia is precluded from raising
a priority challenge based on the theory of claim preclusion.[23]

### 3. Validity – 35 U.S.C. § 112

For the same reasons explained in the Court's discussion on
priority, Evonik has not shown that this litigation is based on
the same set of facts as the Interference.  In its brief,
Materia points out that "Evonik cites no case in which a federal
court applied claim preclusion to hold that an interference
judgment bars a defendant in a patent infringement action from
asserting invalidity defenses."  Evonik responds that Materia's
subsequent validity challenges are barred under issue preclusion
and that there is no need to reach claim preclusion.  As such,
Evonik has not presented facts that show that Materia is
precluded from raising a validity challenge based on the theory

---

[23] Given the broader scope of the claims, it is doubtful
that Evonik would be able to prove that this litigation is based
on the same set of facts as in the Interference proceeding.

of claim preclusion.[24]

## V. CONCLUSION

For all the foregoing reasons, Evonik's motion for partial summary judgment will be granted in part and denied in part. Its motion with regard to precluding Materia's priority claims pursuant to either issue preclusion or claim preclusion will be denied.  Its motion with regard to precluding Materia's validity claims based on 35 U.S.C. § 112 pursuant to either issue preclusion or claim preclusion will be denied.  Its motion with regard to precluding Materia's validity claims based on 35 U.S.C. §§ 102 and 103 based on issue preclusion will be granted.[25]

An appropriate Order follows.

                                        s/Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

Dated:    June 30, 2014
_____

[24] However, Materia's §§ 102 and 103 anticipation and obviousness claims are precluded under the validity as a single issue rule.

[25] Evonik also argues that because Materia failed to file a response to its statement of material facts, that the facts in Evonik's statement should be deemed admitted.  There is no local rule in the District of Delaware requiring a party to file a statement of material facts, or requiring the opposing party to answer such statements.  But cf. Local Rule 56.1(a) for the District of New Jersey (requiring the filing of a statement of material facts along with a summary judgment motion).  The Court finds that Materia has complied with its obligation under Fed. R. Civ. P. 56 to dispute facts advanced by Evonik.