UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Evonik Degussa GmbH, | : | |
| | : | Civil Action No. |
| | : | 09-cv-636 (NLH/JS) |
| Plaintiff, | : | (consolidated with |
| v. | : | 10-cv-200) |
| | : | |
| Materia Inc., | : | **OPINION** |
| Defendant. | : | |

**Hillman, District Judge**[1]

Presently before the Court is Materia's motion to dismiss Evonik's inequitable conduct counterclaim, or in the alternative, motion to bifurcate [D.I. 665]. The Court held oral argument on March 29, 2016. For the reasons that follow, the Court will dismiss the inequitable conduct counterclaim.[2]

On December 21, 2015, the Court entered an Order granting Evonik's motion for partial summary judgment that it does not

---

[1] United States District Court Judge for the District of New Jersey, sitting by designation.

[2] This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1338(a), federal jurisdiction for matters arising under federal patent law.

1

infringe Materia's U.S. Patent No. 7,622,590 (the '590 Patent) [D.I. 649]. Following the Court's decision, Materia provided Evonik with a broad covenant not to sue ("CNS") on the '590 Patent. Based on Federal Circuit precedent, the parties agree that the CNS moots Evonik's counterclaim for invalidity and the parties intend to submit a stipulation dismissing that counterclaim. The parties disagree whether under governing case law the CNS moots Evonik's counterclaim for declaratory judgment as to inequitable conduct regarding the '590 Patent.[3]

A declaratory judgment counterclaim may only be brought to resolve an actual controversy between interested parties. SL Waber, Inc. v. American Power Conversion Corp., 135 F. Supp. 2d 521, 524 (D.N.J. 1999) (citing Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed. Cir. 1995), cert. denied, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996) (quoting 28 U.S.C. § 2201(a))). "The existence of a sufficiently concrete dispute between the parties remains ... a jurisdictional predicate to the vitality of such an action; [i]deed, an actual controversy must be extant at all stages of review, not merely at the time the [counterclaim] is filed."

---

[3] The parties also agree that if the Court dismisses the inequitable conduct counterclaim, it will not impact Evonik's ability to raise inequitable conduct in the context of a § 285 motion for attorneys' fees after trial.

2

Id. (citing Super Sack, 57 F.3d at 1058) (other citations and quotations omitted).

Jurisdiction under the Declaratory Judgment Act arises where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007) (citing MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126, 127 S. Ct. 764, 770, 166 L. Ed. 2d 604 (2007)). A party seeking declaratory judgment bears the burden of showing there is an actual controversy. Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1342 (Fed. Cir. 2007).

The question before the Court is whether following a partial summary judgment determination as to noninfringement, a CNS covering noninfringement, invalidity, and all future claims moots a counterclaim for inequitable conduct. The Court has reviewed the evolving case law and finds that under the specific facts of this case Evonik's inequitable conduct counterclaim is moot.

In Super Sack, 57 F.3d 1054 (Fed. Cir. 1995), the Federal Circuit held that a CNS may resolve the actual controversy between the parties so that the court has no Article III jurisdiction to hear a declaratory judgment action regarding the

validity or enforceability of that patent. In Super Sack, the patentee's covenant not to sue was filed prior to consideration or resolution of the underlying infringement claim. The Federal Circuit found that the CNS rendered the declaratory judgment counterclaim nonjusticiable because "[t]he residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity." Id. at 1060.

The Federal Circuit carved out an exception to the Super Sack rule in Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1348 (Fed. Cir. 2005). In contrast to Super Sack, the Fort James CNS was offered after a verdict of noninfringement and invalidity. The Fort James court held that the jury verdict which decided both noninfringement and validity "did not moot Solo Cup's counterclaim for unenforceability nor did it act to divest the district court of jurisdiction to hear that unlitigated counterclaim." Id. at 1348-49.

Materia argues Fort James is distinguishable because its CNS covers not only noninfringement, which was previously adjudicated by the Court on summary judgment, but also invalidly, making the CNS so broad as to remove any justiciable issue. Additionally, Materia argues that the Court should focus

4

its analysis on Revolution Eyewear, Inc. b. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009), which clarifies that the focus of the constitutional analysis should not be on the timing of the CNS, but "[w]hether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." See also Dow Jones & Co. v. Ablaise Ltd., 606 F.3d 1338, 1348 (Fed. Cir. 2010) ("In the case at bar, Ablaise's covenant not to sue avowed that Ablaise would not sue Dow Jones for any acts of infringement of its '530 patent. The covenant therefore extinguished any current or future case or controversy between the parties, and divested the district court of subject matter jurisdiction."). Materia argues that because its covenant covers all potential claims, it moots Evonik's inequitable conduct counterclaim.

    The Court believes Fort James and Revolution Eyewear are not in conflict. While at first blush Fort James appears to draw a hard line between a CNS provided before or after judgment, the focus on the timing of the CNS in Fort James was part of the court's analysis in defining the scope of the covenant at issue. In Fort James the Federal Circuit found that a counterclaim questioning the validity or enforceability of a patent raised issues beyond the initial claim for infringement. The court held that the jury verdict had removed any reasonably

5

apprehensible justiciable controversy between the parties, rendering the covenant promising never to sue for infringement of the patents-in-suit meaningless. In Fort James the jury made a determination as to noninfringement and invalidity, while here a judgment was only made as to noninfringement. Thus Materia's CNS promises something more meaningful and broader than the Court's Opinion granting partial summary judgment as to noninfringement. Materia's CNS covers invalidity claims as wells as noninfringement claims, extends to future infringement, and applies to all successors, licensees, and users. The Court is satisfied that based on the CNS it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Already, LLC v. Nike, Inc., 133 S. Ct. 721, 723, 184 L. Ed. 2d 553 (2013) (based on the breadth of a CNS a trademark case was rendered moot).

Also distinguishing this case from Fort James is that while the Court previously ruled on Evonik's partial summary judgment motion, it has not yet expended the considerable resources of a trial. See also Tech. Licensing Corp. v. Technicolor USA, Inc., 800 F. Supp. 2d 1116, 1121 (E.D. Cal. 2011) ("Fort James is a narrow exception to the general rule that a covenant not to sue divests the court of subject matter jurisdiction. Two factors set Fort James apart: (1) the court

6

had already gone through the considerable effort" connected with a trial, and (2) in Fort James, the jury's verdict of non-infringement[, rather than the covenant not to sue,] had removed any reasonably apprehensible justiciable controversy between the parties.") (internal citations and quotations omitted).

In sum, Materia's CNS is sufficiently broad to remove any case or controversy regarding the '590 Patent and therefore Evonik has failed to meet its burden of showing a substantial controversy exists as to the '590 Patent. The Court agrees with Materia that for all intents and purposes the CNS "kills the '590 Patent vis-à-vis Evonik." Accordingly, the Court will dismiss the inequitable conduct counterclaim.

It does not follow, however, that all the evidence that would have been offered to prove the inequitable conduct claim is therefore inadmissible evidence regarding the matters left to be tried. In fact, this Court believes at this juncture that most, if not all, of that evidence will be admissible for other purposes. In general, this evidence appears highly relevant to the issues of willfulness and the § 112 defenses of enablement and written description. Specifically, evidence regarding inequitable conduct will be relevant in determining whether Materia had a reason to doubt the validity of its patents and whether the alleged infringement was willful.

The Court wishes to make perfectly clear that the parties may not use this evidence to argue inequitable conduct because that is not a jury question. Materia expressed its concern that this evidence will be used improperly as a "parade of horribles" to poison the jury. The Court is confident that through carefully crafted jury instructions (before and after evidence is offered), the restraint of counsel, and this Court's management, this evidence may be used in appropriate way which avoids prejudice to Materia. The Court believes that with these steps, relevant evidence can be presented in accordance with F.R.E. 404(b) in a way that does not outweigh the danger of prejudice. F.R.E. 403. The final contours of what evidence will be admissible and for what purpose will be decided by the Court upon the appropriate submission of motions in limine.

Additionally, after consultation with the parties, the Court will consider the use of special interrogatories which asks the jury to make factual findings which will be helpful for the Court in its consideration of the appropriateness of attorneys' fees after trial. Fed.R.Civ.P. 49.

**V. CONCLUSION**

For all the foregoing reasons, Evonik's inequitable conduct counterclaim will be dismissed as moot. Evidence previously relevant and admissible as tending to prove the dismissed

counterclaim of inequitable conduct has been determined by the Court to be presumptively admissible on other issues and claims that remain in contention as set forth above.  Either side may submit, at the appropriate time, properly supported motions in limine to include or exclude certain clearly defined evidence.

An appropriate Order follows.

At Camden, New Jersey  
Dated:   April 6, 2016

s/ Noel L. Hillman  
NOEL L. HILLMAN, U.S.D.J.