UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| EVONIK DEGUSSA GMBH, | Civ. No. 09-636 (NLH/JS) |
| Plaintiff, | **OPINION** |
| v. | |
| MATERIA, INC., | |
| Defendant. | |

**APPEARANCES:**

REED SMITH LLP
By: Eric J. Evain, Esq.
    Rudolph E. Hutz, Esq.
    R. Eric Hutz, Esq.
1201 Market Street, Suite 1500
Wilmington, Delaware 19801
        Counsel for Plaintiff

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
By: Jack B. Blumenfeld, Esq.
    Thomas C. Grimm, Esq.
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

    and

NIXON PEABODY LLP
By: Jason C. Kravitz, Esq.
    Gina M. McCreadie, Esq.
    Leslie Hartford, Esq.
100 Summer Street
Boston, Massachusetts 02110

    and

J.A. LINDEMAN & CO., PLLC
By: Aaron M. Raphael, Esq.
    David R. Lipson, Esq.
3190 Fairview Park Drive, Suite 480
Falls Church, Virginia 22042
        Counsel for Defendant


**HILLMAN**, District Judge:

Presently before the Court is Plaintiff Evonik's post-trial Motion for a Permanent Injunction.  At trial, the jury awarded Evonik money damages for Defendant Materia's pre-verdict infringement of the '528 patent through September 30, 2016.

Evonik now seeks entry of a permanent injunction against Materia's continued infringement of the '528 patent.

The Court heard oral argument on the motion on June 20, 2017.  For the reasons stated herein, the motion will be granted.

**I.**

The Court finds the following facts based on the evidence admitted at trial, Materia's Declaration of Mark Trimmer filed in opposition to Evonik's instant motion, and other undisputed or stipulated facts. See Fed. R. Civ. P. 52(a)(2).

Evonik undisputedly owns the '528 patent, and commercially sells metathesis catalysts covered by that patent. (Trial Transcript, hereafter "TT", p. 290, 294)  Materia also sells metathesis catalysts, and is one of Evonik's competitors in that

market. (TT p. 305-06, 1374)  Indeed, as Materia elicited from Evonik's witness on cross-examination, Materia is Evonik's "primary competitor for olefin metathesis catalysts." (TT p. 310)  Both companies sell their metathesis catalysts primarily to clients in the pharmaceutical, oleochemical, fine chemical, and polymer industries. (TT p. 295, 1366-67)

Evonik's business plan has never included licensing the patented technology to its competitors. (TT p. 305)  Even further, Evonik has granted a license to practice the '528 patent only once. (TT p. 305)  That license was not granted to a competitor, but rather to a customer (TT p. 305), and it was granted in connection with the settlement of this lawsuit with one of Materia's co-defendants.

Evonik is much larger than Materia.  Evonik is a multi-billion Euro company, with 30 sites in the United States, and 200 sites worldwide. (TT p. 278-80)  Materia has only two locations: a headquarters in California and a manufacturing facility in Texas. (TT p. 1365)

Materia has not made a profit during any of the years from 2008 through September 2016. (PTX1571.0023; see also TT p. 1370, "Q: Is Materia profitable? A: No we're not.")  However, Mark Trimmer, Materia's Vice President and Chief Technology Officer, states in his declaration, "Materia has sufficient funds to cover the damages awarded by the jury in the amount of

3

$1,550,916.95 and further royalty based on the jury's 5.5%
reasonable royalty rate . . . along with any pre-judgment
interest, if awarded[1], as well as a reasonable ongoing royalty to
practice Claims 8-10 of the '528 Patent through the two-year
remaining life of that patent." (Trimmer Decl. ¶ 5)  Trimmer
also testified that Materia's revenues in 2015 and 2016 were "a
little over 28 million" dollars. (TT p. 1369-70)

Trimmer further states that Materia sells at least one
other type of catalyst-- the Grubbs I catalysts-- which
undisputedly are not covered by the '528 patent. (Trimmer Decl.
¶ 3)  However, Materia sells "far more" Grubbs II catalysts,
which are covered by the '528 patent. (TT p. 1369)

## II.

"The [Court] may grant injunctions in accordance with the
principles of equity to prevent the violation of any right
secured by patent, on such terms as the court deems reasonable."
35 U.S.C. § 283.

To obtain an injunction under § 283, "[a] plaintiff must
demonstrate: (1) that it has suffered an irreparable injury; (2)
that remedies available at law, such as monetary damages, are
inadequate to compensate for that injury; (3) that, considering

---

[1]  Evonik's counsel stated at oral argument that "Evonik's best estimate at this time is that the prejudgment interest is at least $250,000." (June 20, 2017 Tr. p. 179)

4

the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The patentee must establish all four factors to obtain relief. *Nichia Corp. v. Everlight Ams., Inc.,* 855 F.3d 1328, 1344 (Fed. Cir. 2017)("Because Nichia failed to establish one of the four equitable factors, the court did not abuse its discretion in denying Nichia's request for an injunction.").

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay*, 547 U.S. at 391.

**III.**

**A. Irreparable injury**

"Where two companies are in competition against one another, the patentee suffers the harm - often irreparable - of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). The patentee's unwillingness to license the patented technology also weighs in favor of a finding of irreparable harm. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363-64 (Fed. Cir. 2012).

The Court has found that Evonik and Materia are direct and primary competitors in the commercial metathesis catalyst market. The Court has also found that Evonik has not, and will not, license the '528 patent to competitors. Thus, the Court holds that Evonik will suffer irreparable harm without an injunction.

**B.  Inadequate remedy at law**

The nature of the competitive relationship between Evonik and Materia, as well as Evonik's unwillingness to license the '528 patent, also weigh in favor of a conclusion that Evonik has no adequate remedy at law. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1327-28 (Fed. Cir. 2008); *see generally ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1337 (Fed. Cir. 2012)("As the district court correctly observed, the issues of irreparable harm and adequacy of remedies at law are inextricably intertwined.").

"Additionally, 'a patent holder's . . . engagement in lengthy litigation to protect [the] business decision,' [not to license the patented technology] as occurred here, also weighs in favor of finding the remedy at law inadequate." *Sanofi-Aventis Deutschland Gmbh v. Glenmark Pharms. Inc., USA*, 821 F. Supp. 2d 681, 694 (D.N.J. 2011)(quoting Federal Judicial Center's Patent Case Management Judicial Guide Table 9.1).

Evonik also argues that Materia's "questionable financial condition," *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011), further supports a conclusion that Evonik has no adequate legal remedy. The Court however, finds *Robert Bosch* distinguishable on this issue.

In *Robert Bosch*, the Court specifically stated, "the only evidence of record is that [the infringer] likely will be faced with a substantial damages award for its past infringement and may be unable to pay even that." 659 F.3d at 1156. The record evidence here is different. While Materia's financial condition might be characterized as "questionable" in the sense that Materia is not a profitable company, such a finding is not tantamount to a finding that Materia will be unable to pay the judgment in this case. The evidence as to Materia's ability to pay - as distinguished from its profitability - is mixed, and the Court does not find that it is "improbab[le] that [Evonik] could collect a money judgment" from Materia. *Robert Bosch*, 659 F.3d at 1156.

Nonetheless, the Court concludes that the other above-discussed factors weigh heavily in favor of a conclusion of inadequate remedy at law. Accordingly, the Court holds that Evonik has sufficiently established this element.

**C. Balance of hardships**

This element "assesses the relative effect of granting or denying an injunction on the parties." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 645 (Fed. Cir. 2015). "[F]actors [the Court may consider] include[] the parties' sizes, products, and revenue sources." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).

Materia clearly is a much smaller company. The Court also accepts as true Materia's assertion that granting an injunction will impose greater financial hardship on Materia, than not granting an injunction would impose on Evonik.

However, relative financial hardship is but one factor the Court considers in the equitable analysis. "A party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch*, 659 F.3d at 1156.

After eight years of litigation, during which Materia continued to infringe the '528 patent, the Court must now give due weight to Evonik's right to exclude, pursuant to 35 U.S.C. § 154(a)(1), for the remaining two years of the life of the patent. Forcing Evonik to continue competing with its own patented technology would impose a weighty hardship under the circumstances of this case, and would be simply inequitable.

The Court holds that the balance of hardships favors Evonik.

**D.  Public interest**

Enforcing a patentee's right to exclude furthers the public interest.  "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions. 'The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015)(quoting *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

Materia argues that two countervailing factors weigh against granting an injunction.  First, Materia asserts that its customers will be harmed if Materia is enjoined from making and selling its Grubbs II catalyst.  According to Materia, "[t]here is no immediate catalyst replacement without significant re-testing and re-qualification by Materia and the customer.  This means that an injunction will prevent companies who rely on specific infringing catalysts from replacing that supply." (Opposition Brief, p. 15)

The Court concludes that this asserted harm is not sufficiently weighty to outweigh the public interest in enforcing Evonik's patent.  The asserted harm is rather vague;

The Court holds that the balance of hardships favors Evonik.

**D.  Public interest**

Enforcing a patentee's right to exclude furthers the public interest.  "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions. 'The encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'" *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015)(quoting *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006)).

Materia argues that two countervailing factors weigh against granting an injunction.  First, Materia asserts that its customers will be harmed if Materia is enjoined from making and selling its Grubbs II catalyst.  According to Materia, "[t]here is no immediate catalyst replacement without significant re-testing and re-qualification by Materia and the customer.  This means that an injunction will prevent companies who rely on specific infringing catalysts from replacing that supply." (Opposition Brief, p. 15)

The Court concludes that this asserted harm is not sufficiently weighty to outweigh the public interest in enforcing Evonik's patent.  The asserted harm is rather vague;

Materia does not say what will happen if its customers cannot "immediately" replace their supply of catalysts, and in any event, Materia provides no evidence in this regard.

Second, Materia postulates its pharmaceutical customers will be adversely affected because inability to use the Grubbs II catalysts "will cause [those] customers to divert valuable resources to find a substitute, if possible, and set back their research and development," thereby injuring the public health. (Opposition Brief, p. 16) The Court finds this argument speculative and without evidentiary support. As Evonik correctly observes, Materia has not identified even one specific customer that actually will be harmed by an injunction.

The Court holds that the public interest will not be disserved by granting a permanent injunction.

**E. Scope of the injunction**

Materia asserts that "Evonik's requested injunction is vague and overly broad and extends to catalysts that were not accused of infringement." (Opposition Brief, p. 16) In response, Evonik states that it "is willing to modify the language to respond to legitimate objections or concerns." (Reply Brief, p. 8)

Accordingly, now that the Court has held that Evonik is entitled to an injunction, the Court will direct the parties to

meet and confer in an effort to create a mutually agreeable proposed permanent injunction for the Court's consideration.

**IV.**

For the reasons set forth above, the Court holds that all four *eBay* factors weigh in favor of granting Evonik a permanent injunction. Accordingly, Evonik's Motion for a Permanent Injunction will be granted.

Dated: August 9, 2017          \_\_s/ Noel L. Hillman\_\_\_
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.