---

EVONIK DEGUSSA GMBH,                    09-cv-636 (NLH/JS)

       Plaintiff,          **OPINION**

   v.

MATERIA, INC.,

       Defendant.

---

**APPEARANCES:**

ERIC JAMES EVAIN
GRANT & EISENHOFER, P.A.
123 JUSTISON STREET
WILMINGTON, DELAWARE 19801
    On behalf of Plaintiff

R. ERIC HUTZ
RUDOLPH E. HUTZ
RYAN P. COX
REED SMITH LLP
1201 MARKET STREET, SUITE 1500
WILMINGTON, DELAWARE 19801
    On behalf of Plaintiff

JACK B. BLUMENFELD
THOMAS C. GRIMM
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899
    On behalf of Defendant

**HILLMAN, District Judge:**

Before the Court are three separate but overlapping motions filed by Evonik.  First is an informal motion by Evonik to find inequitable conduct.  Second is Evonik's Motion to set aside the judgment of no willfulness, find Materia's pre-verdict infringement willful on summary judgment, and find Materia's post-verdict infringement willful on summary judgment.  Third is Evonik's Motion for enhanced damages pursuant to 35 U.S.C. § 284.

These motions come to the Court following a January 2017 jury trial on the issues of lack of enablement, lack of an adequate written description, willfulness of Materia's infringement, and damages.  The jury found for Evonik on both invalidity counterclaims and awarded damages to Evonik for Materia's infringement of the '528 patent, but found for Materia on the issue of the willfulness of that infringement.  Subsequently, on August 9, 2017, the Court found for Evonik on Materia's counterclaim of invalidity due to indefiniteness.  The Court then entered Judgment on the jury's verdict.[1]

For the reasons that follow, all of Evonik's motions will be denied.

---

[1]    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and pursuant to 28 U.S.C. § 1338(a) for matters arising under federal patent law.

## I. Inequitable Conduct

Before the Court is Evonik's "Opening Brief in Support of Inequitable Conduct." Although not filed as a formal motion, "Evonik requests that the Court find the '590 patent unenforceable due to inequitable conduct." The Court, however, has already held that it lacks jurisdiction to rule on whether the '590 patent is enforceable because Materia has granted Evonik a broad covenant not to sue.

Nonetheless, a finding that Materia engaged in inequitable conduct would support a conclusion that Materia's counterclaim against Evonik for infringement of the '590 patent – in which Evonik prevailed on the basis of noninfringement (hereafter "the '590 infringement action") – is an exceptional case under 35 U.S.C. § 285. A holding that the '590 infringement action is an exceptional case would then open the door to an award of reasonable attorneys' fees to Evonik in connection with that suit. See 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."); Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1370 (Fed. Cir. 2004) ("An award of attorneys' fees under § 285 follows a two-step analysis. The court first determines whether the case is 'exceptional,' and, if so, then determines whether an award of attorneys' fees is appropriate."); Ruiz v A.B. Chance Co., 234 F.3d 654, 669 (Fed. Cir. 2000) ("A finding of inequitable

conduct can be the basis for awarding attorney fees under section 285."). In short, Evonik's application is ultimately about attorneys' fees.[2]

The Court heard oral argument on June 20, 2017. Supplemental briefing was completed on August 9, 2017. For the reasons that follow, the Court finds Evonik has failed to prove Materia engaged in inequitable conduct during the prosecution of the '590 patent.[3]

Evonik contends that Materia's inequitable conduct began during the USPTO interference proceedings (Nos. 105,373 and 105,374) between Professor Grubbs and Professor Nolan, and continued on through post-interference prosecution of the '590

---

[2]     Evonik does not cite § 285 in either of its briefs. At oral argument, the Court asked: "A finding of inequitable conduct . . . means a finding of an exceptional case entitling you to some measure of attorneys fees? Is that what this is ultimately about?" Counsel for Evonik responded: "Yep. . . . if [Materia] pursued inequitable conduct against [Evonik] for all this time, then yes, all of this deals down to attorney's fees." (June 20, 2017 Oral Argument Tr., p. 104-05)

[3]     This Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a)(1). Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980) (holding that to be in compliance with Rule 52(a), findings of fact and conclusions of law do not need to be stated separately in a court's memorandum opinion); see also Ciolino v. Ameriquest Transp. Servs., Inc., 751 F. Supp. 2d 776, 778 (D.N.J. 2010) (issuing an opinion which constituted the courts findings of fact and conclusions of law).

patent.  Evonik asserts four separate, but related, bases of inequitable conduct.

First, it is undisputed that Materia did not disclose the existence of Materia's '125 patent, and related information concerning the '125 patent.[4]  Evonik contends the '125 patent is "but-for prior art," which Materia disputes.  More specifically, Evonik asserts Mark Trimmer[5] "knew that the '125 patent covered what the '590 patent claimed, making the '125 patent invalidating prior art."

Second, Evonik asserts that Materia did not disclose Professor Nolan's alleged derivation of the subject matter of the '590 patent.  Materia disputes derivation, and as will be discussed further below, the jury apparently rejected any finding of derivation when it rendered its verdict against Evonik and in favor of Materia on the issue of Materia's willfulness in infringing the '528 patent.

Third, Evonik asserts that Materia failed to disclose the factual bases for a list of preliminary motions filed by Materia

---

[4]    The parties have often referred to this information as "the Boulder information" because the source of this information was various filings in patent litigation involving Boulder Scientific Company, CalTech and Materia.

[5]    Mark Trimmer is the Executive Vice President of Materia and Materia's Senior Vice President of Research and Development. Trimmer managed the Boulder litigation, the interferences, and the current litigation. (Trial Tr. p. 1308; Trimmer 1/9/14 Dep. Tr. p. 215-16)

in the interferences, which challenged the patentability of the '590 patent.

Lastly, it is undisputed that the Grubbs v. Nolan interferences were settled.  Evonik contends that the parties to the interferences "settled with the intent to conceal from the USPTO Nolan's derivation, the Boulder Information, and the bases underlying Materia's preliminary motions."

"To prevail on inequitable conduct, an accused infringer must show that the applicant: '(1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the [PTO].'" Leviton Mfg. Co. v. Universal Sec. Instruments, Inc., 606 F.3d 1353, 1358 (Fed. Cir. 2010) (alteration in original) (quoting Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363 (Fed Cir. 2007)); see also Transweb, LLC v. 3M Innovative Props. Co., 812 F.3d 1295, 1303-04 (Fed. Cir. 2016) ("A judgment of inequitable conduct requires . . . materiality, knowledge of materiality, and a deliberate decision to deceive." (citing Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011)).

"Intent and materiality are separate requirements.  A district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa.  Moreover, a district

court may not infer intent solely from materiality.  Instead, a court must weigh the evidence of intent to deceive independent of its analysis of materiality."  Therasense, 649 F.3d at 1290.

In extreme cases of "egregious misconduct," or "affirmative misconduct," "materiality [can be] presumed."  Apotex, Inc. v. UCB, Inc., 763 F.3d 1354, 1362 (Fed. Cir. 2014) (referencing Therasense); see also Transweb, LLC, 812 F.3d at 1304 ("Except in cases of egregious misconduct, the materiality must reach the level of but-for materiality.").

## A. Burden of Proof

The Court ordered supplemental briefing from the parties to help determine what the burden of proof is for inequitable conduct in the context of a § 285 entitlement to attorneys' fees.  Specifically, the Court asked: "[M]ust Evonik prove inequitable conduct by clear and convincing evidence . . . or must Evonik prove inequitable conduct by a preponderance of the evidence."

In Therasense, 649 F.3d 1276, the Federal Circuit established the burden of proof for finding inequitable conduct. The Federal Circuit held that "[t]o prevail on the defense of inequitable conduct, the accused infringer must prove that the applicant misrepresented or omitted material information with the specific intent to deceive the PTO.  The accused infringer must prove both elements – intent and materiality – by clear and

convincing evidence." Id. at 1287 (citation omitted) (citing

Star Sci. Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365

(Fed. Cir. 2008)). In applying this heightened burden, the

Court noted that "prevailing on a claim of inequitable conduct

often makes a case 'exceptional,' leading potentially to an

award of attorneys' fees under 35 U.S.C. § 285." Id. at 1289.

The Federal Circuit mentioned this in connection with its

observation that a finding of inequitable conduct has "far-

reaching consequences." Id.

As for the burden of proof for finding a case exceptional,

prior to Octane Fitness, LLC v. Icon Health & Fitness, Inc., 134

S. Ct. 1749 (2014), the standard for finding a case exceptional

was "clear and convincing." Brooks Furniture Mfg. v. Dutailer

Int'l, Inc., 393 F.3d 1378, 1382 (Fed. Cir. 2005) ("[T]he

underlying improper conduct and the characterization of the case

as exceptional must be established by clear and convincing

evidence."), overruled by Octane Fitness, 134 S. Ct. 1749. In

Octane Fitness, the Supreme Court decided:

> [W]e reject the Federal Circuit's requirement that
> patent litigants establish their entitlement to fees
> under § 285 by "clear and convincing evidence." We have
> not interpreted comparable fee-shifting statutes to
> require proof of entitlement to fees by clear and
> convincing evidence. And nothing in § 285 justifies
> such a high standard of proof. Section 285 demands a
> simple discretionary inquiry; it imposes no specific
> evidentiary burden, much less such a high one. Indeed,
> patent-infringement litigation has always been governed
> by a preponderance of the evidence standard, and that is

the "standard generally applicable in civil actions,"
because it "allows both parties to 'share the risk of
error in roughly equal fashion.'"

Octane Fitness, 134 S. Ct. at 1758 (citations omitted) (first

quoting Brooks Furniture, 393 F.3d at 1382; and then quoting

Herman & MacLean v. Huddleston, 459 U.S. 375, 390 (1983)).

The question for this Court is whether Octane Fitness

changed the burden of proof for inequitable conduct when used to

establish an exceptional case.  The supplemental briefing

received from the parties confirms the Court's initial finding

that courts are split on their interpretation of Octane Fitness

as it applies in this context.  Based on the Court's review of

Octane Fitness and Therasense, the Court finds the appropriate

burden of proof to apply in this case to be clear and convincing

evidence.

The Court's reading of Octane Fitness does not show an

intention to change the burden of proof established in

Therasense.  First, Therasense is not cited or referenced in the

Octane Fitness opinion.  If it had been the Supreme Court's

intention to overrule that case, one would certainly expect

mention of Therasense.  Further, the reasons behind the Octane

Fitness Court determining a preponderance of the evidence

standard applies to the exceptional case analysis do not

translate into the inequitable conduct analysis.  And the policy

reasons behind the Therasense court's decision still hold true even in light of the Octane Fitness decision.

In Octane Fitness, the Supreme Court compared § 285 with comparable fee-shifting statutes – a comparison that certainly has no connection with the burden of proof for inequitable conduct.  The Octane Fitness Court also noted that "nothing in § 285 justifies such a high standard of proof."  134 S. Ct. at 1758.  For proving inequitable conduct, however, the Federal Circuit in Therasense pointed out a multitude of "far-reaching consequences" that justified a higher standard of proof.  649 F.3d at 1289.  While the Octane Fitness Court noted that "patent-infringement litigation has always been governed by a preponderance of the evidence standard," and referenced that this standard is generally applicable in civil cases to allow for both parties to equally share in the risk of error, Octane Fitness, 134 S. Ct. at 1758 (citing Huddleston, 459 U.S. at 390), the inequitable conduct clear and convincing standard was an established exception to that generalization at the time Octane Fitness was decided and, again, the Federal Circuit explained the need for a departure from the preponderance of the evidence standard in Therasense.  Sharing equally in the risk of error, when there are such "far-reaching" consequences, justified to the Therasense court that a clear and convincing evidence burden of proof was necessary.

Accordingly, the Court finds that neither <u>Octane Fitness</u>'s clear holding that an exceptional case is governed by a preponderance of the evidence standard, nor the reasoning behind that decision, evidence the Supreme Court's intent to change the burden of proof for showing inequitable conduct, nor does the reasoning support such a result. And without so much as a reference to <u>Therasense</u>, the Court is convinced the Supreme Court did not intend to change the inequitable conduct burden of proof established in that case.

This same position has been adopted by other district courts post-<u>Octane Fitness</u>. For instance, the Eastern District of Texas determined as follows:

> The parties dispute what the correct burden of proof is as to Tyson's allegations of inequitable conduct. It is undisputed that proof of inequitable conduct requires "clear and convincing evidence." Tyson, however, argues that it need only put forward a preponderance of the evidence per the standard in <u>Octane Fitness</u>; it claims to use the label "inequitable conduct" merely as a shorthand. Since inequitable conduct is neither a necessary nor a sufficient condition for a finding of exceptionality, the evidence supporting the allegation stands on its own. Thus, the Court will consider that evidence as part of the "totality of the circumstances" inquiry required by <u>Octane</u>, and the totality of the evidence (including both evidence of alleged inequitable conduct and other evidence) will be weighed using the preponderance of the evidence standard. If the evidence of inequitable conduct is sufficient to satisfy the clear and convincing standard, the proof of inequitable conduct will be entitled to substantial weight in that calculation.

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, Nos. 12-764, 12-338, 2015 WL 1284669, at *5 (E.D. Tex. Mar. 20, 2015) (first quoting *Star Sci., Inc.*, 537 F.3d at 1365; *see also Essociate, Inc. v. 4355768 Can., Inc.*, No. 14-679, 2015 WL 12766051, at *1-2 (C.D. Cal. Apr. 1, 2015) (refusing to engage in an inequitable conduct analysis, but noting that "a defendant must show by clear and convincing evidence" that there was inequitable conduct in determining when a case is exceptional under § 285); *Robbins Co. v. Herrenknecht Tunnelling Sys. USA, Inc.*, No. 13-2113, 2015 WL 3454946, at *4 (N.D. Ohio May 29, 2015) (applying a clear and convincing evidence standard); *Stretchline Intellectual Props. Ltd. v. H&M Hennes & Mauritz LP*, No. 10-371, 2015 WL 5175196, at *6 (E.D. Va. Sept. 3, 2015) (following *DietGoal*'s approach).[6]

The Court recognizes those cases that have come down the other way, finding a preponderance of the evidence standard applicable in light of *Octane Fitness*. *See Snap-on Inc. v. Robert Bosch, LLC*, No. 09-6914, 2016 WL 1697759, at *4 (N.D.

---

[6]     The Court notes that the parties dispute the meaning of this passage from *DietGoal*. The Court reads the opinion to state that, even in the context of a § 285 motion, clear and convincing evidence is needed to establish _proof_ of inequitable conduct, which is entitled to substantial weight. If a party fails to meet that burden, however, evidence supporting the allegation of inequitable conduct can still be factored into the Court's consideration of the totality of the circumstances in determining if the case is exceptional, under a preponderance of the evidence.

Ill. Apr. 28, 2016) ("Assuming that the preponderance standard applicable to § 285 attorney fee motions applies (ordinarily, the clear and convincing standard applies to an inequitable conduct defense to patent enforceability), Bosch has not proven inequitable conduct."); E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc., No. 12-517, 2015 WL 4603463, at *5 (D.N.H. July 30, 2015) ("When raised as a defense, inequitable conduct must be proved by clear and convincing evidence. But where . . . inequitable conduct is raised as a basis for an award of attorney fees under 35 U.S.C. § 285, the court applies the preponderance of the evidence standard prescribed by Octane Fitness." (first citing Am. Calcar, Inc. v. Am. Honda Motor Co., 768 F.3d 1185, 1188 (Fed. Cir. 2014); and then citing Octane Fitness, 134 S. Ct. at 1758))).[7] However, none of these cases provide a detailed analysis on the choice of this particular

---

[7] The Court also notes several cases have referenced this issue in determining the burden of proof but have declined to decide the issue. See, e.g., Skedco, Inc. v. Strategic Operations, Inc., No. 13-968, 2016 WL 8678445, at *11 (D. Or. Apr. 1, 2016); Novartis Corp. v. Webvention Holdings LLC, No. 11-3620, 2015 WL 6669153, at *4 n.5 (D. Md. Oct. 28, 2015) ("Post-Octane Fitness, courts have disagreed on the burden that applies to proving inequitable conduct before the PTO. Some courts have held that clear and convincing evidence is the standard during the liability phrase, whereas a preponderance of the evidence standard applies when inequitable conduct is raised as the basis for a fee award under 35 U.S.C. § 285." (first citing Stretchline Intellectual Props., 2015 WL 5175196; and then citing Octane Fitness, 134 S. Ct. at 1758 n.6, 1757)). These decisions have been considered by the Court but do not impact the Court's analysis.

burden of proof, and none of these cases convince the Court that a preponderance of the evidence standard is the correct one to apply post-Octane Fitness.

**B. The asserted nondisclosure of alleged derivation**

Before turning to this Court's findings of fact and conclusions of law, the issue of Professor Nolan's alleged derivation, and Materia's asserted failure to disclose such derivation (Evonik's second asserted basis for a finding of inequitable conduct) must be separately addressed.

Materia asserts, and the Court agrees, that this Court cannot find that Professor Nolan did, in fact, derive his invention covered by the '590 patent from Professor Herrmann. All of the facts supporting Evonik's argument in this regard were put before the jury at trial. In finding against Evonik, and for Materia, on the issue of willful infringement of the '528 patent, the jury necessarily must not have found that Professor Nolan stole his idea from Professor Herrmann. The Court cannot, as a matter of law, make a finding of fact that directly conflicts with the jury's verdict in this regard. See Door-Master Corp. v. Yorktowne, Inc., 256 F.3d 1308, 1314 (Fed. Cir. 2001) ("[T]he district court may reweigh evidence in deciding whether the case is exceptional so long as the court's findings do not conflict with the jury's findings." (citing Jurgens v. CBK, Ltd., 80 F.3d 1566, 1572 (Fed. Cir. 1996))).

Thus, the Court rejects Evonik's second basis for inequitable conduct.  Moreover, to the extent that the other asserted bases are dependent in part on alleged derivation – namely, Evonik's assertion that the Grubbs v. Nolan interferences were settled to hide the fact of derivation, among other things; and the assertion that the alleged derivation was the underlying factual basis of at least two of Materia's listed preliminary motions – the Court does not consider those aspects of Evonik's arguments.

## C. The remaining grounds for inequitable conduct

Evonik's first and third bases of inequitable conduct are based on nondisclosures which Evonik asserts were but-for material to the '590 patent prosecution.  Evonik's theory concerning the fourth basis – settlement of the interference – is based not on deliberate withholding of material information, but rather what Evonik asserts is egregious misconduct aimed at preventing the need for ever disclosing but-for material information.

As to all of these bases, however, Evonik must establish that Materia made a "deliberate decision to deceive." <u>Transweb</u>, 812 F.3d at 1304.  As Evonik itself quotes in its brief, "the specific intent to deceive must be the single most reasonable inference to be drawn from the evidence . . . .  Indeed, the evidence must be sufficient to <u>require</u> a finding of deceitful

intent in light of all the circumstances." <u>Therasense</u>, 649 F.3d at 1290.

**1. The evidence does not support a conclusion that anyone acting on behalf of Materia made a deliberate decision to deceive the USPTO.**

Of course, a factfinder often will be required to "'infer intent from indirect and circumstantial evidence' because 'direct evidence of deceptive intent is rare.'" <u>Transweb</u>, 812 F.3d at 1304 (quoting <u>Therasense</u>, 649 F.3d at 1290). Nonetheless, <u>Therasense</u> requires that the indirect and circumstantial evidence must add up to a singular inference of deceitful intent. The evidence fails in this critical regard.

Evonik asserts that there is clear evidence of deceptive intent in the actions and testimony of Trimmer and Materia's patent agent, Mark Warzel. According to Evonik, "this is not a close case." But when the evidence itself is considered, it is much more equivocal than Evonik makes it out to be.

The Court begins with Trimmer's Boulder Declaration executed on July 14, 2003. (PX-1152). The declaration explained to the Colorado district court how Professor Nolan and Materia were competitors, and why Professor Nolan, in his role as expert witness for Materia's adversary in the Boulder litigation, should not have access to Materia's confidential documents it had produced in the litigation. The declaration is eight pages long and consists of sixteen numbered paragraphs.

The '125 patent is mentioned exactly once; and not in relation to Nolan's '590 patent application.

Rather, Trimmer's Declaration points to Materia's '125 patent as an example of the overlap between Materia's technology in the ROMP polymer area and a different patent application filed by Nolan which also "describes and claims certain . . . ROMP reactions." (¶ 10). In a separate paragraph, Trimmer states that "a subset of the complexes covered by claim 1" of Nolan's '590 patent application "would infringe" Materia's '121 and '139 patents without any mention of Materia's '125 patent. (¶ 11).

In an apparent attempt to bridge this gap, Evonik relies on the following general statements in Trimmer's declaration:

- "[a] review of Prof. Nolan's publications and patents reveals a great deal of overlap between Prof. Nolan's research and commercial activities and Materia's technology" (Trimmer Decl. ¶ 7); and

- "Prof. Nolan's articles also reveal substantial overlap between his work and Materia's technology" (Id. ¶ 12).

Based on these selected portions of Trimmer's Declaration, Evonik would have the Court draw the inference that "Trimmer knew that the '125 patent covered what the '590 patent claimed, making the '125 patent invalidating prior art." The Court rejects that inference as without sufficient evidentiary support. The Court also rejects as unsupported by the evidence

the related assertion that Trimmer later deliberately decided
not to disclose the '125 patent as prior art during the '590
patent prosecution.

With regard to the failure to disclose the '125 patent and
related information, Trimmer testified at his deposition:

> [Trimmer reading Materia's response to Interrogatory
> Number 29]: It says no one made a decision not to
> disclose the specific Boulder information identified.
>
> Q:    Okay.  So it's not a question of someone just
>       decided not to do it, it just never came up,
>       correct?
>
> A:    It just never came to mind, no.

(Trimmer 30(b)(6) Dep. p. 153; <u>see also</u> p. 275 "[The '125
patent] did not come to my mind."; p. 274 "Q: Why wasn't the
'125 disclosed in connection with the '590? A: I don't know.  I
don't know.")[8]

Evonik invites the Court to discredit this testimony based
on a very slim reed: twenty entries on Materia's privilege log.
(PX-1309)  The log demonstrates that Trimmer was included in
approximately twenty e-mail communications in 2008 and 2009
concerning the '590 patent while the '590 patent was being

---

[8]    During oral argument on the instant motion, counsel for
Evonik repeatedly characterized this testimony as Trimmer
asserting that he had "memory loss," that he "just forgot,"
"forgot all about this stuff," that he had a "memory lapse,"
that Trimmer's testimony was that "I forgot about it."  (Oral
Argument Tr. p. 81-83, 87).  Evonik's moving brief makes the
same assertions.  The Court finds no evidential support for
counsel's characterization.

prosecuted. Of course the content of those communications are unknown, and further, Trimmer was either the author or recipient of only eleven e-mails; the remainder he was merely copied on.

Nonetheless, Evonik reasons that since Trimmer had communications, and saw communications, concerning the '590 patent, there is no way the Boulder information and the '125 patent could not have come to Trimmer's mind, and therefore Trimmer must be lying. The Court disagrees. Evonik has pointed to no evidence contradicting Trimmer's testimony. There is no inherent inconsistency between Trimmer's testimony and the privilege log.

The evidence concerning Warzel's alleged deceptive intent is even weaker. Evonik's theory is that Warzel was "willfully blind" to the need to disclose to the Patent Office the factual bases for the list of Materia's preliminary motions.

Warzel became Materia's in-house patent agent shortly after the interferences were settled. He testified at his deposition[9] that when he took over the post-interferences prosecution of the '590 patent, he did not conduct "a full and complete review of every document that might have been part of" the interference file. (Warzel 3/13/14 Dep. p. 89-90) More specifically, he

---

[9]    Warzel was outside the subpoena power of the Court and did not testify at trial.

testified "I did not know about the list of [preliminary] motions," (Id. at p. 115), which was drafted and filed prior to Warzel's employment with Materia.

Based on this testimony, Evonik argues that Warzel "shirk[ed] his duty [as a licensed practitioner] to investigate" and "fail[ed] in his duty to be fully informed."[10]  Even assuming, for argument's sake, that Evonik is correct in this regard, it does not follow that "[t]he consequence of these failures is that deceptive intent may be inferred," as Evonik strenuously asserts.

The Court declines to draw such an inference based solely on the fact that Warzel did not look for information related to interferences that had settled prior to Warzel's employment with Materia.  The implicit assumption of Evonik's willful blindness argument is that Warzel had some reason to believe or suspect that Materia had engaged in inequitable conduct prior to Warzel's arrival at Materia.  The evidence does not support such a factual finding.

The Court does not find that anyone acting on Materia's

---

[10]    Evonik also asserts that Warzel breached his duty to disclose but that argument is inconsistent with the undisputed evidence that Warzel did not even know of the existence of the information Evonik asserts he should have disclosed.  Warzel testified "I'm not even aware of the existence of the list of motions, let alone the motions themselves." (Warzel 3/13/14 Dep. p. 128);(see also id. p. 171 "I did not know about the list of motions or the motions themselves.").

behalf intended to deceive the USPTO.

**2. The evidence does not support a finding of egregious misconduct.**

The egregious misconduct exception to the but-for materiality requirement is intended "to capture extraordinary circumstances" of misconduct. Therasense, 649 F.3d at 1293. Therasense provides the following examples of egregious misconduct: "the filing of an unmistakably false affidavit," *id.* at 1292; "manufactur[ing] false evidence," id.; "perjury and suppression of evidence," id. at 1293; "manufacture and suppression of evidence," id.; and "bribery and suppression of evidence," id.

Assuming without deciding that suppression of evidence alone can, in some instances, be sufficient to support a finding of egregious misconduct, compare id. ("perjury *and* suppression of evidence," "manufacture and suppression of evidence," "bribery and suppression of evidence"(emphasis added)), the Court concludes that settling the interferences is not tantamount to suppressing evidence. Preventing the need for disclosing certain evidence in the first place is not analogous to actively taking steps to hide evidence that must be disclosed. The Court does not find Materia engaged in egregious misconduct when it settled the interferences.

For the reasons set forth above, the Court holds that Evonik has not established by clear and convincing evidence[11] that Materia engaged in inequitable conduct.[12]

That being said, the Court acknowledges that Evonik intends to move for attorneys' fees under § 285,[13] and that Evonik intends to advance additional bases for finding this case exceptional other than inequitable conduct, as explained (inappropriately) in its supplemental brief and at the hearing before this Court on inequitable conduct. In light of this finding that there is not clear and convincing evidence of inequitable conduct, the Court will still consider any motion for attorneys' fees on other bases, and the Court will give due consideration to the allegations that make up Evonik's

---

[11]     However, the Court finds that even on the more lenient preponderance of the evidence standard, Evonik has failed to show inequitable conduct in this case, such that its inequitable conduct argument would fail under either burden this Court were to apply. This Court's finding that the clear and convincing evidence standard should apply under these circumstances thus is not essential to the Court's resolution of this dispute.

[12]     At the end of its opposition brief, Materia argues that Evonik's motion is frivolous and states that this Court should impose sanctions on Evonik, pursuant to 28 U.S.C. § 1927. The Court declines to sanction Evonik. While the Court concludes that Evonik's motion is without sufficient evidentiary support, it does not find the motion frivolous.

[13]     "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "The prevailing party may prove the existence of an exceptional case by showing inequitable conduct before the PTO." Leviton Mfg. Co., 606 F.3d at 1358.

inequitable conduct claim even in light of its finding that the clear and convincing evidence burden has not been established. See Octane Fitness, 134 S. Ct. at 1756 ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").

## II. Pre-Verdict Willfulness

Evonik asks the Court to alter or amend the judgment based on its allegation that the jury considered improper evidence, leading to its verdict in favor of Materia on willfulness. Evonik asks the Court to then enter summary judgment on willfulness, arguing there are no genuine issues of material fact.

Federal Rule of Civil Procedure 59(e) provides a device for a party to make a motion "to alter or amend a judgment." "A proper motion to alter or amend judgment 'must rely on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence [not available previously]; [or] (3) the need to correct clear error [of law] or prevent manifest injustice."'" N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995) (alterations

in original) (quoting Nat. Res. Defense Council v. U.S. Envtl. Prot. Agency, 705 F. Supp. 698, 702 (D.D.C.), vacated on other grounds, 707 F. Supp. 3d (D.D.C. 1989)). A "[p]laintiff's mere dissatisfaction with the jury's assessment . . . does not constitute manifest injustice." Norman v. Elkin, 849 F. Supp. 2d 418, 423 (D. Del. 2012). "The standard for obtaining relief under Rule 59(e) is difficult to meet." Carrier Corp. v. Goodman Global, Inc., 162 F. Supp. 3d 345, 370 (D. Del. 2016).

Evonik's motion rests on its argument "that it was error to permit the jury to consider evidence that Materia allegedly developed a belief that Evonik's patent claims were invalid." Evonik posits that this information "tainted" the judgment of the jury "because it was given the option to accept Materia's excuse that it developed a belief that the '528 patent was invalid months after it decided to infringe." At the October 24, 2017 hearing before this Court, Evonik phrased the question before the Court as follows: "Was the jury verdict of no willfulness tainted by [Mark] Trimmer's testimony that Materia developed a belief that Evonik's '528 patent was invalid, where Materia did not hold that belief when it started infringing in June 2008?"[14]

---

[14] The specific legal error Evonik is claiming is the Court's decision on one of its motions in limine which allowed this evidence to be heard by the jury.

The Court finds it must reject this argument. The Court finds reference to Materia's summation instructive here, as it succinctly tells the story Materia asked the jury to believe:

> Trimmer downloaded a copy of the '528 patent in early June of 2008, a few days after it issued. . . . And Evonik makes a big deal about the fact that Trimmer didn't undertake any investigation until . . . Materia received that threatening letter from Evonik in September of 2008.
>
> So you heard Mark Trimmer testify that he missed it. He did download this thing and he missed it. He doesn't deny that. Right?
>
> But what's interesting is that, take a look when he forwards this patent, right, this is the Herrmann patent, 2008, he forwards it to Mark Warzel, patent agent at Materia, and he says all of three letters, FYI. Does that sound like panic? Does that sound like someone who has just seen that his employer's biggest competitor has issued a patent with a claim broad enough to cover their biggest product? . . . Or does that sound like someone who actually genuinely didn't realize what was in there?
>
> . . . .
>
> . . . [Evonik] want[s] you to infer from the fact that Mark Trimmer saw this patent, realized that the patent issued on June 2, 2009, they want you to infer that he did this intentionally. He decided I'm going to play dumb. I'm going to ignore the fact that this patent is a big deal, that this patent is coming right at the heart of my products. Right?
>
> . . . [T]hey want you to believe that they finally expanded it to cover all NHCs, and his big reaction was FYI? And he thinks that his biggest competitor – this is their theory – his biggest competitor just got a patent that covers his biggest product, and he can just bury it. It will just go away, right? I'll pretend I never saw it.
>
> It's ridiculous. He missed it. Should he have been more careful? Clearly. Clearly he should have been more careful. But he didn't see it. And there's no evidence to suggest that he did. . . .
>
> . . . .

> . . . How did Trimmer miss it?  Because it looks an
> awful lot like all the claims in the prior patents.
> Okay.  That's how he missed it.  There's no evidence of
> intent, willfulness.  There's no evidence of wanton,
> reckless conduct.  It's just a mistake, and that's not
> willfulness.
>
> . . . .
>
> Mark Trimmer did not engage in willful, reckless,
> wanton conduct.  There's no evidence to suggest
> otherwise.  There's insinuation and there's innuendo and
> there's character assassination.

Of course, Evonik presented a different story, with a
different recitation of the facts and the legal connotations for
those facts.  However, the Court is not convinced that the
picture painted by Materia was an unreasonable one for the jury
to believe.  Thus, it becomes relevant what Materia did once it
was unquestionably alerted to the scope of Evonik's patent.  The
Court allowed that evidence in, and the Court does not find it
did so in error.

As Evonik phrases it: "The proper inquiry is what was in
the mind of the infringer when he learned of the adverse patent
rights and still decided to infringe."  The time in which
Materia "learned of the adverse patent rights" was a question of
fact set before the jury – did Materia learn of Evonik's adverse
patent rights in June when the patent issued, or in September
upon receiving Evonik's letter?  Clearly Materia learned of the
patent itself in June, but the point in time in which it

realized that the patent rights were _adverse_ is a different matter.

Willfulness necessarily involves knowledge of the patent and of infringement.  As the Court instructed the jury at trial, "the burden to prove willful infringement includes more than mere knowledge of the patent."  _Aeritas, LLC v. Alaska Air Grp., Inc._, 893 F. Supp. 2d 680, 685 (D. Del. 2012).  While Evonik argues to the Court that there is no question Trimmer had knowledge of both the patent and its scope, this was a question for the jury.  That Evonik believes Trimmer's testimony was "transparently false and self-serving" and should not have been believed, and would not have been believed if not for the Court allowing this evidence, does not merit the Court altering the verdict as found by the jury.  The Court found, and reaffirms here, that the evidence was relevant and properly admitted, and whether Trimmer's testimony was credible was, and remains, for the jury.

Evonik argues _Halo Electronics, Inc. v. Pulse Electronics, Inc._, 136 S. Ct. 1923 (2016) requires a different result.  _Halo_ established the current framework for determining willfulness in 2016.  In _Halo_, the Supreme Court overturned the willfulness test from _In re Seagate Technology, LLC_, 497 F.3d 1360 (Fed. Cir. 2007).  The Supreme Court explained the _Seagate_ test as follows:

> First, "a patentee must show by clear and convincing
> evidence that the infringer acted despite an objectively
> high likelihood that its actions constituted
> infringement of a valid patent," without regard to
> "[t]he state of mind of the accused infringer." . . . .
>
> Second, after establishing objective recklessness,
> a patentee must show – again by clear and convincing
> evidence – that the risk of infringement "was either
> known or so obvious that it should have been known to
> the accused infringer."  Only when both steps have been
> satisfied can the district court proceed to consider
> whether to exercise its discretion to award enhanced
> damages.

Halo, 136 S. Ct. at 1930 (alteration in original) (citation

omitted) (quoting Seagate, 497 F.3d at 1371).

The Supreme Court found "[t]he Seagate test 'is unduly

rigid, and it impermissibly encumbers the statutory grant of

discretion to district courts.'"  Id. at 1932 (quoting Octane

Fitness, 134 S. Ct. at 1755).  "In particular," the Supreme

Court found the Seagate test "can have the effect of insulating

some of the worst patent infringers from any liability for

enhanced damages."  Id.

> The Seagate test aggravates the problem by making
> dispositive the ability of the infringer to muster a
> reasonable (even though unsuccessful) defense at the
> infringement trial.  The existence of such a defense
> insulates the infringer from enhanced damages, even if
> he did not act on the basis of the defense or was even
> aware of it.  Under that standard, someone who plunders
> a patent – in fringing it without any reason to suppose
> his conduct is arguably defensible – can nevertheless
> escape any comeuppance under § 284 solely on the strength
> of his attorney's ingenuity.

Id. at 1933.  The Court stated that "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct."  Id.[15]

Evonik argues Halo stands for the proposition that "willfulness is measured by assessing the infringer's state of mind when he or she learns of the patent at issue and thereafter decides to infringe or continue to infringe," which Evonik argues is limited to when "Materia learned of Evonik's '528 patent on June 2, 2008."  The Court disagrees with Evonik's interpretation of Halo and its application to this case.

Halo clearly stands for the proposition that timing matters in determining willfulness.  In this case, however, the Court does not find this limits the window in which a jury could find willfulness solely to June 2, 2008.  In its brief, Materia states: "Nothing in Halo restricts that 'challenged conduct' to the knowledge of the actor at the very moment it becomes aware of an issued patent that it has no reason to believe it is infringing."  The Court agrees with this reading of Halo.  The Court finds that the period of "challenged conduct" is broader than Evonik would make it seem, and that Halo's limitation

---

[15]   The Court further disclaimed the clear and convincing standard of proof for the more lenient preponderance of the evidence standard.  Halo, 136 S. Ct. at 1934.

applies to those defenses that were never relied on during this period of challenged conduct.

The Court finds that granting Evonik's motion would result in an unjustified overturning of the jury's verdict that there was not willfulness in this case.  See Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1250 (Fed. Cir. 1989) ("Willfulness of behavior is a classical jury question of intent.  When trial is had to a jury, the issue should be decided by the jury." (citation omitted)), superseded by statute on other grounds, B. Braun Med., Inc. v. Rogers, 163 F. App'x 500, 509 (9th Cir. 2006); accord WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1340 (Fed. Cir. 2016) (The Federal Circuit "do[es] not interpret Halo as changing the established law that the factual components of the willfulness question should be resolved by the jury.").  The Court will not alter the judgment to find willfulness.[16]

### III. Post-Verdict Willfulness

Evonik asks the Court to also find post-verdict willfulness by Materia, separate and distinct from its request for the Court to find pre-verdict willfulness.  The Court does not find sufficient evidence of post-verdict willfulness.

---

[16]    Evonik's motion similarly asks for the Court to grant summary judgment on willfulness.  As the Court will not be amending the judgment, the Court will deny this request.

Materia concedes that it continued its sales until receipt

of the Court's August 2017 Opinion and Order on indefiniteness,

at which point it ceased all sales.  Evonik argues "Materia's

indefiniteness defense has been without legal basis at least

since the Court's <u>Markman</u> Opinion."  However, the Court did not

rule on indefiniteness until August 2017, when the Court granted

summary judgment in favor of Evonik.  The Court finds that as

the Court declined ruling on indefiniteness prior to that point,

despite several opportunities to do so, Materia's post-verdict

infringement was not willful.[17]

### IV. Enhanced Damages

35 U.S.C. § 284 allows the awarding of enhanced damages:

> Upon finding for the claimant the court shall award
> the claimant damages adequate to compensate for the
> infringement, but in no event less than a reasonable
> royalty for the use made of the invention by the
> infringer, together with interest and costs as fixed by
> the court.
> When the damages are not found by a jury, the court
> shall assess them.  In either event the court may
> increase the damages up to three times the amount found
> or assessed.  Increased damages under this paragraph
> shall not apply to provisional rights under section
> 154(d).

A finding of willfulness is a prerequisite to awarding

enhanced damages.  <u>Ansell Healthcare Prods. LLC v. Reckitt</u>

<u>Benckiser LLC</u>, No. 15-915, 2018 WL 620968 (D. Del. Jan. 30,

---

[17]   Materia asks the Court to sanction Evonik "for requiring
Materia to respond to this frivolous argument."  The Court
declines to do so.

2018) ("Under Halo, . . . before the Court can consider whether to award enhanced damages, the factfinder must first determine that the defendant's behavior was subjectively willful under a preponderance of the evidence standard."); accord Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., No. 04-1371, 2017 WL 6206382, at *6 n.9 (D. Del. Dec. 8, 2017) ("Courts may decline to enhance damages even after a finding of willfulness – but they may not enhance damages absent such a factual finding."). While "a necessary" basis for enhancing damages, a finding of willfulness is not a sufficient condition for enhancing damages. Idenix Pharms. LLC v. Gilead Scis., Inc., 271 F. Supp. 3d 694, 698 (D. Del. 2017). Rather, a finding of willfulness "merely 'opens the door' to the Court making a discretionary decision as to whether damages should be enhanced." Id.

Evonik concedes that "a degree of culpability" is needed to warrant enhanced damages. It argues that this "can be satisfied several ways, including by a finding of willful infringement, inequitable conduct or litigation misconduct." Evonik cites Jurgens, 80 F.3d 1566 for this proposition. The Court finds this to be a distorted reading of Jurgens.

Jurgens states that "[b]ecause increased damages are punitive, the requisite conduct for imposing them must include some degree of culpability." Id. at 1570. It recognized that

"[a]n act of willful infringement satisfies this culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award."  Id. Recognizing that "[i]ncreased damages also may be awarded to a party because of the bad faith of the other side," the Jurgens court warned that "[t]he correlation between bad faith, willful infringement and increased damages . . . is sometimes misunderstood because the term 'bad faith' has numerous patent law applications," only some of which "are relevant in determining the predicate culpability for an increased damages award."

Evonik focuses on this statement that bad faith can support inequitable conduct in isolation.  However, the Jurgens court continues:

> Bad faith is used, for example, in referring to misconduct in the prosecution of or litigation over a patent.  Such conduct includes inequitable conduct during patent prosecution, bringing vexatious or unjustified suits, attorney or client misconduct during litigation, or unnecessarily prolonging litigation. These acts by themselves, however, are not sufficient for an increased damages award under section 284 because they are not related to the underlying act of infringement and say nothing about the culpability of the infringer.  Only a culpable infringer can be held liable for increased damages, not an innocent one.  The listed acts might be evaluated to determine if the infringer acted willfully in light of the totality of the surrounding circumstances.  The ultimate fact to be proven, that is, the basis for increased damages, however, would be that the infringement was willful, not that litigation activities were improper.  Thus, although an infringer's inequitable conduct in

33

> prosecuting his own patents, or his egregious conduct in
> infringement litigation may be sufficient for other
> sanctions or fee awards, or may be used as a factor in
> determining whether or how much to increase a damages
> award once sufficient culpability is found, these
> actions are not sufficient independent bases to justify
> increased damages under section 284.

Id. at 1570-71 (citations omitted) (emphasis added). "'Bad faith' is more correctly called 'bad faith infringement,' and it is merely a type of willful infringement." Id. at 1571. Evonik fails to appreciate this clarification from the Jurgens court. Jurgens does not change the established law that willfulness is a prerequisite for enhanced damages.

As the Court stated earlier in this Opinion, the Court will uphold the jury's determination on willfulness. Accordingly, the Court does not address the Read factors[18] and will deny Evonik's motion for enhanced damages.

---

[18]

> When the court considers whether to enhance damages based on willfulness, it turns to the factors set forth in Read Corp. v. Portec, Inc., 970 F.2d 816, 826-27 (Fed. Cir. 1992), overruled on other grounds by Markman v. Westview Inst. Inc., 52 F.2d 967 (Fed. Cir. 1995): (1) deliberate copying; (2) defendant's investigation and good faith-belief of invalidity or non-infringement; (3) litigation behavior; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of the misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) attempted concealment of the misconduct.

Green Mountain Glass LLC v. Saint-Gobain Containers, Inc., No. 14-392, 2018 WL 1202638, at *10 (D. Del. Mar. 8, 2018) (citing Read, 970 F.2d at 826-27).

An accompanying Order will be entered.


Date:  March 28, 2018                          s/ Noel L. Hillman
At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.